11-175-cv(L)
Ransmeier v. UAL Corporation, et al.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

————————————

August Term, 2011

(Argued: May 23, 2012                    Decided: May 15, 2013)

Docket Nos. 11-175-cv & 11-640-cv

————————————

JOHN C. RANSMEIER, ADMINISTRATOR OF THE ESTATE OF LOUIS NEIL MARIANI, DECEASED,

*Plaintiff-Appellee*,

*and*

COLGAN AIR INC., A VIRGINIA corporation, US AIRWAYS, INC., A DELAWARE corporation, L 3 COMMUNICATIONS CORPORATION SECURITY AND DETECTION SYSTEMS, A DELAWARE corporation, L 3 COMMUNICATIONS CORPORATION, A DELAWARE corporation, L 3 COMMUNICATIONS HOLDINGS, INC., A DELAWARE corporation, INVISION TECHNOLOGIES, INC., STATE OF INCORPORATION UNKNOWN, QUANTUM MAGNETICS, INC., STATE OF INCORPORATION UNKNOWN, HEIMANN SYSTEMS CORP., STATE OF INCORPORATION UNKNOWN, AIR FRANCE, A FRENCH corporation, DELTA AIRLINES, A corporation, SWISS, A SWISS corporation, AIR JAMAICA, A JAMAICAN corporation, CAPE AIR, AIR TRANSPORT ASSOCIATION, A TRADE ORGANIZATION,

*Defendants*,

UAL CORPORATION, AN ILLINOIS corporation, UNITED AIRLINES, INC., AN ILLINOIS corporation, HUNTLEIGH USA CORPORATION, A MISSOURI corporation, ICTS INTERNATIONAL NV, A NETHERLANDS BUSINESS ENTITY OF UNKNOWN FORM, GLOBAL AVIATION SERVICES, A DELAWARE corporation, BURNS INTERNATIONAL SECURITY SERVICES CORP., A DELAWARE corporation, SECURITAS AB, A SWEDISH BUSINESS ENTITY OF UNKNOWN FORM, MASSACHUSETTS PORT AUTHORITY, A GOVERNMENT ENTITY, THE BOEING COMPANY, AN ILLINOIS corporation, MIDWEST EXPRESS AIRLINES, INC., A WISCONSIN corporation, CONTINENTAL AIRLINES, INC., A corporation, DOES, 1 THROUGH 100, INCLUSIVE, MIDWEST AIRLINES, INC.,

*Defendants-Appellees*,

*-v.-*

ELLEN MARIANI, Proposed Intervenor,

*Appellant.*

_____

Before:

HALL, CARNEY, *Circuit Judges.*[1]

_____

After an appeal from a judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*), this court AFFIRMED the district court's judgment denying Appellant's motion to intervene, and ordered the Appellant and her attorney to show cause why they should not be sanctioned for their conduct on appeal. We conclude that Appellant and her attorney's conduct in prosecuting this appeal was frivolous and offensive, and therefore warrants the imposition of sanctions.

_____

Bruce Leichty, Clovis, California, *for Appellant*.

Peter G. Beeson, Devine Millimet & Branch, Professional Association, Concord, New Hampshire, *and* Charles R. Capace, Zimble & Brettler, Boston, Massachusetts, *for Plaintiff-Appellee*.

Jeffrey J. Ellis, Quirk and Bakalor, P.C., New York, New York, *and* Michael R. Feagley, Mayer Brown, LLP, Chicago, Illinois, *for Defendants-Appellees*.

_____

HALL AND CARNEY, *Circuit Judges*:

On June 26, 2012, this panel issued a summary order (1) affirming the judgment of the United States District Court for the Southern District of New York (Hellerstein, *J.*) denying Appellant's renewed motion to intervene, and (2) ordering Appellant and her attorney to show cause why they should not be sanctioned for their conduct before this Court. *See Ransmeier v. Mariani*, 486 F. App'x 890, 893-94 (2d Cir. 2012) (summary order). We have now reviewed their submissions, as well as the totality of their behavior in this case, in particular with respect to their Motion to Supplement the Record (the "Motion"). For the reasons set forth below, we

_____

[1] Hon. Barrington D. Parker, Jr., originally assigned to this panel, recused himself from consideration of this appeal. Pursuant to Internal Operating Procedure E(b), formerly § 0.14(b) of the Local Rules of the United States Court of Appeals for the Second Circuit, the appeal – including this sanctions matter – was decided by the panel's remaining two judges, who are in agreement as to the disposition.

invoke the inherent power of this Court and impose sanctions in the form of double costs jointly and severally on Appellant Ellen Mariani and her counsel, Bruce Leichty.

## I.    Procedural History

This case's lengthy procedural history is set out in detail in two prior decisions of this Court.  *See generally Ransmeier v. Mariani*, 486 F. App'x 890; *N.S. Windows, LLC v. Minoru Yamasaki Assocs., Inc.*, 351 F. App'x 461 (2d Cir. 2009) (summary order) ("*N.S. Windows*").

Briefly, Ellen Mariani is the widow of Louis Mariani, who died in one of the planes involved in the tragic September 11, 2001 terrorist attacks.  *See N.S. Windows*, 351 F. App'x at 465.  Mariani and her step-daughter, Lauren Peters, both filed related wrongful death suits against various airlines and other parties in the Southern District of New York.  *Id.*  In 2004, Mariani and Peters entered into an agreement in New Hampshire probate court, pursuant to which Mariani resigned as administrator of her late husband's estate, and a neutral administrator was appointed to replace Mariani.  The administrator was "to act to dismiss with prejudice" Mariani's suit and pursue only the step-daughter's suit ("the Peters suit").  *Id.*

After entering into that agreement, Mariani apparently had second thoughts.  Starting in 2005, she has repeatedly attempted to intervene in the Peters suit, arguing primarily that her probate court agreement did not divest her of what she calls her "independent loss of consortium claim."  Mariani Br. at 4.  In each of these proceedings, our Court and the district court concluded that "Mariani's probate court agreement with Peters demonstrated [Mariani's] clear intention and commitment to abandon *all* her claims, including her loss of consortium claims." *Ransmeier*, 486 F. App'x at 892 (emphasis added).

In deciding Mariani's second appeal, we became deeply concerned by two aspects of the case as framed by Mariani's counsel Bruce Leichty.  First was its apparent frivolousness.  In *N.S.*

*Windows* we had affirmed the district court's holding that, by virtue of her agreement with Peters, Mariani had no legal status in the federal action and that any arguments she cared to make regarding her individual loss of consortium claim were properly addressed only to the New Hampshire probate court. *N.S. Windows*, 351 F. Appx at 466-67. In appealing once again to this Court, Mariani persisted in making arguments that we had clearly rejected, and others that were irrelevant.

Our other concern with Mariani's second appeal was the disturbing manner in which she and her counsel prosecuted it. We noted, in particular, the "discreditable tone" of her filings. *Ransmeier*, 486 F. App'x at 893. We also wrote that her briefs featured "an escalating series of *ad hominem* attacks on opposing counsel and bombastic challenges to the integrity of the district court," *id.*, which culminated with the particularly offensive Motion to Supplement the Record to introduce "newly-discovered evidence" of the district court's alleged partiality. *Id.* This purported "evidence" consisted of little more than a series of offensive insinuations, unmistakably anti-Semitic, about Judge Hellerstein, his family members, their professional work and some of their personal charitable activities.

We therefore ordered Mariani and her counsel to show cause why they should not be sanctioned in the amount of double costs.

II.     Analysis

Our authority to impose sanctions is grounded, first and foremost, in our inherent power to control the proceedings that take place before this Court. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43-44 (1991). "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Id.* (quotation marks omitted). Thus a federal court – any

4

federal court – may exercise its inherent power to sanction a party or an attorney who has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46. We may impose sanctions *nostra sponte*. *Id.* at 42 n.8; *see also Gallop v. Cheney (Gallop I)*, 642 F.3d 364, 370 (2d Cir. 2011).

Beyond our inherent power, two additional sources provide authority to impose sanctions. Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Further, Federal Rule of Appellate Procedure 38 provides that, after providing notice and a reasonable opportunity to respond, a court of appeals may "award just damages and single or double costs" if it determines that an appeal is frivolous. Both of these rules, however, are supplementary. Neither "displaces the inherent power to impose sanctions for [litigants'] bad-faith conduct." *Chambers*, 501 U.S. at 47.

Although perhaps the most common reason for a sanctions award may be the "patently frivolous" nature of an appeal, *see, e.g.*, *Gallop I*, 642 F.3d at 370, we also impose sanctions where the conduct of the sanctioned litigant or attorney evinces bad faith or an egregious disrespect for the Court or judicial process. We recently sanctioned attorneys who "repeatedly and in bad faith accused the Court of bias, malice, and general impropriety." *Gallop v. Cheney (Gallop III),* 660 F.3d 580, 584 (2d Cir. 2011) (per curiam), *vacated in part on other grounds*, *Gallop v. Cheney (Gallop IV),* 667 F.3d 226, 231 (2d Cir. 2011). In *Gallop III*, we imposed sanctions on an attorney who had demanded the recusal of the panel and "any other members of [our Court] who share their feelings," noting in *Gallop II* that the attorney's actions appeared "malicious" and "intended, in bad faith, to use his position as an attorney of record to harass and

5

disparage the Court." *Gallop v. Cheney (Gallop II)*, 645 F.3d 519, 521 (2d Cir. 2011) (ordering attorney to show cause why sanctions should not be imposed); *see also Gallop III*, 660 F.3d at 586 (imposing sanctions).

These two justifications for imposing sanctions – patently frivolous legal argument and egregious conduct – may emerge in the same case. We are especially likely to impose sanctions on an attorney for offensive conduct where such conduct suggests that the attorney allowed antagonism toward the Court to "undermine his legal judgment and interfere with his duty to provide thoughtful and reasoned advice to his client." *Gallop III*, 660 F.3d at 585. Indeed, an appeal or motion is more likely frivolous where it is motivated by bad faith or an attorney's desire to "air personal grievances against the Court" as opposed to a sincere belief that the particular motion or appeal will be successful. *Id.* Frivolous appeals and motions of this sort waste judicial resources and undermine the integrity of the judicial process.

A.      Attorney Leichty

It is well settled that an attorney's conduct on appeal as well as the arguments he makes may expose him to sanctions both under our inherent power and under the proscriptions of 28 U.S.C. § 1927 and Federal Rule of Appellate Procedure 38. *See Gallop I*, 642 F.3d at 370. We therefore begin with Attorney Leichty, who has represented Mariani during the entire course of this appeal and has put his name on each of the filings that has caused serious concern.

As to frivolousness, Attorney Leichty asserts that he reasonably believed that his client's second appeal had merit. At the very least, he says, he should not be faulted for misapprehending the preclusive effect of *N.S. Windows* under the law-of-the-case doctrine. *See* Leichty Resp. to Order to Show Cause at 9 ("[T]here was no *indisputable* 'law of the case' preventing Ellen Mariani from bringing a second intervention motion . . . on what she believed

6

were different and compelling facts.").  For present purposes, we will accept that argument.

Although a competent attorney should have realized that *N.S. Windows* necessarily foreclosed

the motion to intervene, the appeal, while not meritorious in and of itself, is not so frivolous as to

warrant sanctions.

But of course, sanctions are not limited only to frivolous *appeals*.  Frivolous arguments

with regard to a motion – particularly where that frivolousness is coupled with inappropriate

conduct that suggests the attorney was motivated by bad faith – may also merit the imposition of

sanctions by this Court.  *See* 28 U.S.C. § 1927; *Chambers*, 501 U.S. at 45-46; *Gallop III*, 660

F.3d at 584.  We conclude that Mariani's related Motion to Supplement the Record, filed by

Leichty in connection with the second appeal, is such a motion.

In this litigation, Leichty has engaged in a pattern of vexatious and duplicative filings,

targeting opponents and judges with rude language, and asserting spurious legal positions.[2]  He

has nonetheless managed to avoid sanctions up to this point.  On April 19, 2012, however, he

crossed the line by filing the wholly inappropriate Motion.   We conclude that the Motion was

---

[2] For example, during the pendency of the *N.S. Windows* appeal, Leichty requested, by letter dated September 9, 2009, that the caption be changed to "Mariani v. Ransmeier."  This request was devoid of legal merit.  Federal Rule of Appellate Procedure 12(a) required the Clerk to docket the appeal under the caption used by the district court, dispelling Leichty's baseless suggestion that the clerk had chosen the caption with the design of debasing his client.  But it was not so much its patent disregard of Rule 12, as the tone of the letter that was especially disdainful.  Instead of sticking to legal argument, Leichty's letter devolved into personal attacks, accusing the Clerk of Court of intentionally making Mariani "look foolish," of "'thumbing its nose' at the appellant," and of "sending a message about the arbitrary and capricious intent of the Court." Letter from Attorney Leichty to Clerk's Office, *N.S. Windows, LLC v. Minoru Yamasaki Assocs.*, No. 07-5442-cv (2d Cir. Sept. 10, 2009).

We note, further, that in Leichty's appellate briefing, he permitted himself to indulge in similarly unprofessional language regarding opposing counsel.  For example, in one brief he ridicules Ransmeier's counsel for a minor misspelling and suggests to us that the error is a reason to ignore Ransmeier's arguments.  This is not good lawyering.  It is just a cheap shot.

frivolous, and even more significantly, that it was filed to air false and egregiously insulting views about the district court without any good-faith belief that the Motion would be successful.

Leichty asserts in the Motion that he has obtained "newly-discovered evidence" demonstrating that Judge Hellerstein is unfairly biased against his client. This is a baseless and repugnant assertion from multiple vantages. As a threshold matter, the Motion is procedurally defective. Although Leichty claims to rely on Federal Rule of Appellate Procedure 10 in seeking to supplement the record, that rule specifically limits the record on appeal to materials presented to the trial court. The record contains no indication that Leichty attempted to submit the materials at issue to the district court. Alternatively, he invokes judicial notice as a basis for our consideration of materials attached to the Motion, but the allegedly new "facts" are not remotely the type of uncontestable facts of which we may take judicial notice. *See* Fed. R. Evid. 201.

These technical deficiencies, however, pale alongside the ludicrous arguments Leichty makes in support of the Motion. Leichty's main argument is, in sum, that Judge Hellerstein is partial to defendants and must recuse himself because his adult son, an attorney, at one point was employed by a law firm in Israel that at some time represented two companies that might have an indirect connection to some of this case's defendants. He also makes reference to certain religiously-oriented philanthropic activities of the family, which he says evince partiality. Section 455(a) of Title 28 of the United States Code provides in pertinent part that a federal judge "shall disqualify himself in any proceeding in which his impartiality might *reasonably* be questioned." 28 U.S.C. §455(a) (emphasis added); *see also Liteky v. United States*, 510 U.S. 540, 548 (1994). Leichty's argument that such an attenuated chain of relationships calls Judge Hellerstein's impartiality into question is patently frivolous. In filing this motion, Leichty had to know that he was proceeding "without the slightest chance of success." *Gallop I*, 642 F.3d at

8

370 (internal quotation marks omitted).

This leads us to the question of why the Motion *was* brought. Leichty's behavior belies the possibility that he was motivated by a belief that the Motion would be successful. Rather than making good-faith legal arguments, his Motion seems to us to be nothing more than a vehicle for making personal slurs against Judge Hellerstein and his family. In fact, on closer observation, Leichty's real argument is that Judge Hellerstein cannot be impartial because he is Jewish. The papers filed in support of the Motion reflect anti-Semitism in a raw and ugly form. For a private citizen to make such spurious and offensive suggestions is bad enough. For an attorney admitted to this Court to make them in court pleadings is unpardonable.

We note, of course, that no law or court may prevent Leichty from believing what he chooses to believe. In most contexts, he may also say the things he says. What he is not allowed to do, however, is to let his misguided views cloud his judgment regarding what arguments may properly be made to this Court. In other words, we do not sanction him here for harboring anti-Semitic views. Rather, we impose sanctions against him because he allowed those views to prompt him to submit frivolous and grossly insulting arguments to this Court. *See Gallop III*, 660 F.3d at 585-86 (sanctioning an attorney who allowed "his emotional reaction . . . to further undermine his legal judgment and interfere with his duty to provide thoughtful and reasoned advice to his client").

To deter Leichty from acting similarly in the future, and to warn other lawyers about the consequences of similarly egregious behavior, we impose sanctions on Attorney Leichty in the form of double the costs incurred by Ransmeier in responding to the Motion.

B.   Appellant Mariani

For purposes of determining whether to impose sanctions, we analyze the conduct of parties and their attorneys separately. "The rule that the sins of the lawyer are visited on the client does not apply in the context of sanctions," and we therefore must "specify conduct of the client herself that is bad enough to subject her to sanctions." *Gallop III*, 660 F.3d at 584 (alterations and quotation marks omitted). Non-attorney clients do not share the same ethical obligations that their attorneys owe this Court. *Id.* at 583. Furthermore, although clients are responsible for dictating the ultimate goals of a lawsuit, *see* ABA Model R. of Professional Conduct, R. 1.2, we recognize that attorneys often have considerable latitude in the exercise of their professional judgment to design litigation strategies to achieve those goals. A client should not be punished when an attorney, without the client's approval, exercises that responsibility unwisely. *See, e.g.*, *Gallop III*, 660 F.3d at 583-84 (declining to impose sanctions against client where she "did not spearhead her litigation strategy").

Mariani, however, is a veteran of federal court litigation, and she affirmatively admits that she "worked closely" with Attorney Leichty in preparing the Motion to Supplement the Record. Decl. of Ellen Mariani in Support of Motion at 1. Indeed, it is the declaration filed under her name, and signed with her signature, that includes some of the most offensive allegations against Judge Hellerstein. Mariani, too, is therefore jointly responsible with her attorney for the double costs imposed by this Order.

## III.   Conclusion

For the foregoing reasons, it is hereby **ORDERED** that Appellant Ellen Mariani and her attorney Bruce Leichty are **SANCTIONED** in the amount of double the costs incurred by

10

Ransmeier in responding to the Motion. They shall be jointly and severally liable for the amount, which shall be paid within sixty days of entry of this order.

Although we have authority to impose additional sanctions in the form of fines or attorney's fees on Mariani and Attorney Leichty, *see Gallop III*, 660 F.3d at 586, we decline to do so at this time. We trust that this relatively public reprimand will suffice to prevent similar transgressions in the future.