21-2084-cv
*Rossbach et al. v. Montefiore Medical Center et al.*

# In the
# United States Court of Appeals
## For the Second Circuit

————

AUGUST TERM 2022

ARGUED: JANUARY 19, 2023
DECIDED: AUGUST 28, 2023

No. 21-2084

ANDREA ROSSBACH,
*Plaintiff-Appellant,*

DEREK SMITH LAW GROUP, PLLC, DANIEL ALTARAS,
*Appellants,*

*v.*

MONTEFIORE MEDICAL CENTER, NORMAN MORALES, PATRICIA
VEINTIMILLA,
*Defendants-Appellees.*

————

Appeal from the United States District Court
for the Southern District of New York.

————

1

Before: WALKER, RAGGI, and PARK, *Circuit Judges*.

————

Plaintiff-Appellant Andrea Rossbach sued her employer, Defendant-Appellee Montefiore Medical Center, and two of its employees, Defendants-Appellees Norman Morales and Patricia Veintimilla, asserting claims of sexual harassment during, and retaliatory discharge from, her employment.

The principal evidence in support of Rossbach's sexual harassment claims was a series of sexually suggestive text messages that she alleged were from Morales. Following the district court's (Cote, *J.*) grant of partial summary judgment in their favor, Defendants-Appellees moved to dismiss Rossbach's remaining claims and sought sanctions against Rossbach and her counsel, Appellant Daniel Altaras and his firm, Appellant Derek Smith Law Group, PLLC ("DSLG"), contending that these text messages were a forgery. Following the submission of forensic expert reports, an evidentiary hearing, and briefing on the motion, the district court found by clear and convincing evidence that Rossbach had fabricated the text messages, falsely testified about their production, and spoliated evidence in an attempt to conceal her wrongdoing. The district court also found that Altaras had facilitated Rossbach's misconduct. The district court dismissed Rossbach's remaining claims with prejudice pursuant to its inherent power and Federal Rule of Civil Procedure 37(e), and, under its inherent power and 28 U.S.C.

2

§ 1927, imposed a monetary sanction of attorneys' fees, costs, and expenses incurred by Defendants-Appellees against Appellants.

On appeal, Appellants challenge various aspects of the district court's conduct prior to, during, and following the evidentiary hearing, its dismissal of the action and imposition of a monetary sanction, and the amount of that sanction. These arguments are meritless, except for one: We hold that in sanctioning Rossbach's counsel the district court applied the incorrect legal standard. Accordingly, we **VACATE** the portion of the district court's judgment imposing a sanction on Altaras and DSLG and **REMAND** for further proceedings consistent with this Opinion. We **AFFIRM** the judgment of the district court in all other respects.

_____

DANIEL J. ALTARAS, Derek Smith Law Group, PLLC, New York, NY, *for Plaintiff-Appellant Andrea Rossbach and Appellants Derek Smith Law Group, PLLC and Daniel Altaras.*

JEAN L. SCHMIDT (Joseph E. Field, *on the brief*) Littler Mendelson, P.C., New York, NY, *for Defendants-Appellees Montefiore Medical Center, Norman Morales, and Patricia Veintimilla.*

_____

JOHN M. WALKER, JR., *Circuit Judge*:

Plaintiff-Appellant Andrea Rossbach sued her employer, Defendant-Appellee Montefiore Medical Center, and two of its employees, Defendants-Appellees Norman Morales and Patricia Veintimilla,[1] asserting claims of sexual harassment during, and retaliatory discharge from, her employment.

The principal evidence in support of Rossbach's sexual harassment claims was a series of sexually suggestive text messages that she alleged were from Morales. Following the district court's (Cote, *J.*) grant of partial summary judgment in their favor, Montefiore moved to dismiss Rossbach's remaining claims and sought sanctions against Rossbach and her counsel, Appellant Daniel Altaras and his firm, Appellant Derek Smith Law Group, PLLC ("DSLG"),[2] contending that these text messages were a forgery. Following the submission of forensic expert reports, an evidentiary hearing, and briefing on the motion, the district court found by clear and convincing evidence that Rossbach had fabricated the text messages, falsely testified about their production, and spoliated evidence in an attempt to conceal her wrongdoing. The district court also found that Altaras had facilitated Rossbach's misconduct. The district court dismissed Rossbach's remaining claims with prejudice pursuant to its inherent power and Federal Rule of Civil Procedure 37(e), and, under its inherent power and 28 U.S.C. § 1927, imposed a

---

[1] This Opinion refers to Defendants-Appellees collectively as "Montefiore."
[2] Where issues pertain to all Appellants, this Opinion refers to Rossbach and her counsel collectively as "Appellants."

monetary sanction of attorneys' fees, costs, and expenses incurred by Montefiore against Appellants.

On appeal, Appellants challenge various aspects of the district court's conduct prior to, during, and following the evidentiary hearing, its dismissal of the action and imposition of a monetary sanction, and the amount of that sanction. These arguments are meritless, except for one: We hold that in sanctioning Rossbach's counsel the district court applied the incorrect legal standard. Accordingly, we **VACATE** the portion of the district court's judgment imposing a sanction on Altaras and DSLG and **REMAND** for further proceedings consistent with this Opinion. We **AFFIRM** the judgment of the district court in all other respects.

## BACKGROUND

Rossbach, a registered nurse, was employed from 2014 to 2018 in the emergency department of the children's hospital at Montefiore Medical Center. Following her January 2018 discharge for violating the hospital's drug and alcohol policy, Rossbach filed this lawsuit, raising federal, state, and local gender discrimination, hostile work environment, retaliation, and tort claims against the hospital and two of its employees. Broadly, Rossbach alleged that she was sexually harassed by Morales, her supervisor, and that when she objected to Morales's conduct, Morales and Veintimilla retaliated against her, culminating in her firing.

Following the completion of discovery, Montefiore moved for summary judgment on several of Rossbach's claims, primarily those related to her termination. The district court granted that motion in

5

part. *Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 930710 (S.D.N.Y. Mar. 11, 2021) (*Rossbach I*). It denied summary judgment, however, as to many of Rossbach's claims relating to Morales's alleged sexual harassment.

Four days after the district court issued its summary judgment opinion and order, Montefiore moved to dismiss Rossbach's remaining claims and sought sanctions against Rossbach and her counsel. Montefiore alleged that Rossbach forged the principal evidence of her sexual harassment claims: an image of a series of three sexually suggestive text messages sent from Morales to Rossbach. Montefiore contended that Rossbach committed perjury by falsely testifying at her deposition regarding the document's origin, and that she spoliated evidence by failing to preserve text messages in their original format and by disposing of the cell phone she claimed to have used to photograph the messages. Montefiore also sought sanctions against Altaras and DSLG, arguing that, as Rossbach's counsel,

Altaras should have realized that the document was a forgery and taken remedial measures.

The document at issue was originally produced by Rossbach as a PDF file in May 2020. It is reproduced below:



At her October 2020 deposition, Rossbach testified that the device on which she received the depicted text messages was an iPhone 5 that, at the time of her receipt of the messages in 2017, had "severe screen cracks" and an "ink bleed." App'x 330, 332. Rossbach testified that this damage prevented her from taking a screenshot

directly on the iPhone 5, and that she instead took a photograph of the messages with a new iPhone X purchased in late 2017. Rossbach also testified that she gave the iPhone 5 and its passcode to Altaras for production to Montefiore. Rossbach repeated this passcode at her deposition, after she was informed that Montefiore's discovery vendor could not unlock the phone with that same passcode.

Following Rossbach's deposition, Montefiore requested the original file of the text message document and Rossbach produced the image in JPEG format. Montefiore engaged a forensic expert to examine the file. The expert concluded that the document was a forgery based on the document's inconsistency with Rossbach's testimony and nonconformity with iPhone text message characteristics. At a February 11, 2021 meeting, Montefiore presented its expert's preliminary findings of fabrication to Altaras and gave notice of its intent to move for dismissal and sanctions unless Rossbach voluntarily dismissed the action.

Rossbach refused to dismiss the action and maintained that the text message document was authentic. On March 19, 2021, in opposition to Montefiore's request for leave to move for dismissal and sanctions, Rossbach filed a declaration purporting to clarify her explanation of the events surrounding the document's production. She swore that she reviewed her iPhone 5 in March 2020, at which time the screen was not cracked, but instead was malfunctioning and flickering. She claimed that she used her iPhone X to photograph the text messages "in a moment while the screen was not flickering" to

8

send them to Altaras.[3] *Id.* at 32. She stated that she later gave her iPhone 5 to Altaras but that it could not be unlocked because, sometime *after* she took the photograph of the text messages, someone dropped the phone, resulting in the cracked screen and ink bleed that she had previously testified existed at the time she took the photograph. Rossbach asserted that the iPhone X she used to take the photograph also began to malfunction, and that she traded it in for a new phone.

The district court ordered the parties to submit expert reports and scheduled an evidentiary hearing. In the interim, Rossbach cross-moved for sanctions against Montefiore, arguing that Montefiore misrepresented that Morales's cell phones had been "forensically reviewed" during discovery and requesting that the district court order a forensic examination of the devices. *Id.* at 36. The district court ordered that Rossbach's cross-motion for sanctions would be addressed at the evidentiary hearing.

On April 22, 2021, the district court held the evidentiary hearing on the issue of Rossbach's alleged fabrication. The district court accepted the experts' reports as direct testimony and allowed cross-examination on their contents. Rossbach also testified. At the conclusion of the hearing, the district court read into the record its findings that, by clear and convincing evidence, Rossbach had fabricated the document at issue, given false testimony about its

---

[3] In later testimony at the evidentiary hearing, Rossbach stated that she stopped the iPhone 5 from flickering by placing her finger on the screen to take the photograph. She conceded that the image does not depict her finger.

production, and spoliated evidence in an effort to conceal the fabrication. The district court granted Montefiore leave to move to dismiss the remainder of the case and for sanctions. The district court proposed two briefing timelines on the motion: (1) an expedited schedule, and (2) an extended schedule to permit the parties to engage in settlement discussions. Altaras, with the agreement of Montefiore's counsel, selected the latter.[4]

At the conclusion of the evidentiary hearing, the district court denied Rossbach's motion for sanctions against Montefiore. The district court found that the dispute about the examination of Morales's cell phones centered on an inconsequential misunderstanding of the word "forensic," that, consistent with his discovery obligations, Morales's devices had been properly searched, and that Rossbach "d[id] not articulate any reason why [a true forensic] examination would be necessary."[5] *Id.* at 409.

On August 5, 2021, upon complete briefing, the district court issued an opinion and order granting Montefiore's motion to dismiss and for sanctions. *Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 3421569 (S.D.N.Y. Aug. 5, 2021) (*Rossbach II*). The district court reiterated its earlier findings of fact, upon which it based its determination that the text message document—"[t]he primary piece of documentary evidence supporting Rossbach's allegation that

---

[4] The district court subsequently denied Rossbach's request for an extension of time to oppose Montefiore's motion to dismiss and for sanctions, noting that she had already been afforded an extended briefing schedule.

[5] The district court subsequently denied Rossbach's motion for reconsideration of this denial.

10

she was sexually harassed by Morales"—was fabricated. *Id.* at *2. First, the district court found that the characteristics of the document were inconsistent with Rossbach's account of its creation. The district court cited, as conflicting and incredible, Rossbach's testimony about a cracked screen versus a flickering screen with an ink bleed, and the fact that the image of the text messages—which Rossbach represented to be a photograph of her iPhone 5's screen—did not depict any of these defects. Second, the district court accepted Montefiore's expert's testimony that the purportedly original file did not have the metadata associated with a photograph taken on an iPhone X. Moreover, analysis of the image "indicate[d] that it [was] not a photograph at all." *Id.* at *4. Third, the district court found, based on the same expert's testimony, that the document did not depict text messages as they would appear on an iPhone 5 (or, in fact, any iPhone), due to differences in the appearance of icons and contact information, font size and style, and emoji design.

The district court also concluded that Rossbach committed perjury by falsely testifying about the document's origin at her deposition, in her March 2021 declaration, and at the evidentiary hearing. The district court also determined that Rossbach spoliated evidence by refusing to provide the correct passcode for her iPhone 5 and by disposing of her iPhone X during the pendency of the litigation.

Based on these findings, the district court dismissed Rossbach's remaining claims with prejudice and imposed a monetary sanction jointly and severally on Rossbach, Altaras, and DSLG consisting of

11

Montefiore's attorneys' fees, costs, and expenses associated with addressing Rossbach's fabrication.

The district court found that, under its inherent power and Federal Rule of Civil Procedure 37(e), a case-terminating sanction was authorized and warranted. The district court explained that Rossbach had committed a fraud on the court by "willfully and in bad faith fabricat[ing] evidence in this action and attempt[ing] to mislead the [c]ourt regarding her actions." *Id.* at *6. The district court found that, "[g]iven the severity and willfulness of her conduct, dismissal with prejudice [wa]s the only appropriate sanction" because "[a] lesser sanction . . . would be insufficient to remedy the impact of this misconduct or to deter future misconduct." *Id.* at *7. Moreover, trying the case "would be a pointless waste of judicial resources," because the jury would learn that Rossbach fabricated the limited documentary evidence of her sexual harassment claims. *Id.* Alternatively, the district court found that dismissal was proper under Rule 37(e), based on Rossbach's knowing and intentional spoliation of electronically stored information.

The district court imposed a monetary sanction on Rossbach pursuant to its inherent power, noting that her conduct "caused the defendants to incur the significant expense of investigating her actions and litigating" its motion for sanctions. *Id.* at *8. The district court found that a sanction of Montefiore's attorneys' fees, costs, and expenses associated with addressing Rossbach's fabrication was warranted to "restore the prejudiced parties to the same position they would have been in" absent her misconduct. *Id.* (internal quotation

12

and alteration marks omitted) (quoting *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779 (2d Cir. 1999)).

The district court imposed the same monetary sanction on Altaras and DSLG under its inherent power and 28 U.S.C. § 1927. The district court stated that Altaras "negligently or recklessly failed to perform his responsibilities as an officer of the court" and violated the New York Rules of Professional Conduct. *Id.* (internal quotation marks omitted) (quoting *Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001) (per curiam)). The district court noted that, when confronted with evidence of Rossbach's fabrication at several points during the litigation, Altaras failed to conduct a reasonable investigation to ensure that by pressing Rossbach's arguments he was not facilitating the use of false evidence or suborning perjury. It also found that Altaras allowed his client to spoliate evidence by failing to adequately advise Rossbach to preserve her iPhones and their data. Last, the district court found that Altaras "unreasonably and vexatiously multiplied proceedings," supporting a sanction pursuant to 28 U.S.C. § 1927, including by filing Rossbach's false March 2021 declaration, submitting a largely non-responsive expert report, standing by Rossbach's complaint even after her fabrication became obvious, and filing a "frivolous" cross-motion for sanctions against

Montefiore. *Id.* at *9. The district court set a briefing schedule for calculating the fee award.[6]

On October 22, 2021, the district court fixed the monetary award at $157,026.27. *Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 4940306, at *3 (S.D.N.Y. Oct. 22, 2021) (*Rossbach IV*). The district court found this award necessary to compensate Montefiore for its "reasonable" attorneys' fees, costs, and expenses that "were integrally connected with the conduct necessitating the imposition of sanctions," namely, Rossbach's fabrication and Altaras's misconduct. *Id.* at *2. The district court excluded from its award fees associated with Montefiore's response to Rossbach's cross-motion for sanctions.

## DISCUSSION

On appeal, Appellants challenge the district court's conduct prior to, during, and following the evidentiary hearing, its dismissal of Rossbach's remaining claims, and its imposition of a monetary sanction. For the reasons that follow, we find all of these arguments to be without merit, save one: We hold that the district court erred by

---

[6] During the briefing period on Montefiore's fee application, Rossbach filed the instant appeal and moved to stay the district court proceedings pending appeal. The district court denied this motion. *Rossbach v. Montefiore Med. Ctr.*, No. 19CV5758 (DLC), 2021 WL 4206885, at *1 (S.D.N.Y. Aug. 26, 2021) (*Rossbach III*). Rossbach then filed a motion for an extension of time to submit her opposition to Montefiore's fee application. The district court denied this motion, too. Appellants filed an amended notice of appeal after the district court fixed the monetary sanction against them.

applying the incorrect legal standard in imposing sanctions against Altaras and DSLG.

## I. "Forensic" Examination of Morales's Cell Phones

Rossbach appeals the district court's denial of her motion for sanctions against Montefiore related to the examination of Morales's cell phones. Rossbach primarily contends that the district court erred by denying her motion without giving her an opportunity for oral argument.

"We review the district court's denial of sanctions for abuse of discretion." *Kim v. Kimm*, 884 F.3d 98, 106 (2d Cir. 2018). A district court need not conduct an evidentiary hearing or hold oral argument on a sanctions motion "when there is no disputed question of fact or when sanctions are based entirely on an established record." *Schlaifer Nance & Co. v. Est. of Warhol*, 194 F.3d 323, 335 (2d Cir. 1999). In her motion, Rossbach argued that Montefiore "knowingly and willfully lied" to Altaras about how Morales's cell phones had been examined. App'x 36. But the record is clear that at the time the parties initially corresponded about a "forensic" examination of Morales's cell phones, they mutually intended the simple gathering and searching of data, including all text messages. This routine discovery was properly carried out. As the district court noted, Rossbach did not explain the necessity of a more intensive examination of Morales's devices, given that she did not challenge the integrity of documents Morales produced in discovery. The district court did not abuse its discretion in denying Rossbach's motion for sanctions.

15

## II. Admission and Exclusion of Evidence, Findings of Fact, and Credibility Determinations at the Evidentiary Hearing

Rossbach raises several issues related to the district court's admission and exclusion of evidence, credibility determinations, and factual findings at the evidentiary hearing.

First, Rossbach argues that the district court should not have considered Montefiore's expert evidence going to the text message document's authenticity in deciding whether to allow Montefiore's motion to dismiss and for sanctions, because the district court's deadline to complete expert discovery had passed. This court reviews discovery scheduling matters for abuse of discretion. *Grochowski v. Phoenix Constr.*, 318 F.3d 80, 86 (2d Cir. 2003). The district court did not abuse its discretion in permitting Montefiore to submit its forensic expert evidence. As the district court explained, the discovery was not untimely at all because it did not concern a matter covered by the standard discovery schedule (which went to the merits), but rather "an inquiry as to whether sanctionable conduct has occurred in this litigation." App'x 404.

Second, Rossbach argues that the district court erred at the evidentiary hearing by excluding certain demonstrative exhibits and striking certain expert testimony. The court reviews a district court's evidentiary rulings for abuse of discretion, "and a ruling on the admissibility of expert testimony is to be sustained unless manifestly erroneous." *Lore v. City of Syracuse*, 670 F.3d 127, 155 (2d Cir. 2012) (internal quotation marks omitted). Moreover, we will reverse "only if an erroneous [evidentiary] ruling affected a party's substantial

16

rights." *Marcic v. Reinauer Transp. Cos.*, 397 F.3d 120, 124 (2d Cir. 2005).

The district court disallowed exhibits and associated testimony that had not been exchanged with Montefiore in advance and that raised new material not addressed in Rossbach's expert report.[7] The district court acted within its discretion in controlling the admission of evidence in this manner to avoid surprise or "trial by ambush." *Ginns v. Towle*, 361 F.2d 798, 801 (2d Cir. 1966). As the district court noted, the proper mechanism by which Rossbach could have expanded on her expert's testimony was through an application requesting oral direct examination or permission to submit a supplemental or reply expert report. In any event, Rossbach has not explained how the exclusion of this evidence "affected [her] substantial rights." *Marcic*, 397 F.3d at 124. She contends only that the omitted evidence was "highly relevant to the alleged fabrication," Appellants' Br. 19, but not that it would have altered the district court's conclusion. Her failure to do so is fatal to her claim of reversible error. *See Manley v. AmBase Corp.*, 337 F.3d 237, 248 (2d Cir. 2003) (exclusion of evidence affects substantial rights only if the proponent demonstrates a "likelihood that the error affected the outcome" of the proceeding (internal quotation marks omitted)).

Third, Rossbach argues that the district court's findings of fact at the conclusion of the evidentiary hearing, which it repeated in its sanctions opinion and order ultimately dismissing the case, violated

---

[7] The district court had previously ordered that the experts' reports would constitute their direct testimony.

17

her Seventh Amendment right to a jury trial. But a motion for sanctions does not automatically require an evidentiary hearing at all. *Schlaifer*, 194 F.3d at 335–36. When one is held, however, it is plain that "[a]n evidentiary hearing serves as a forum" for the district court to find facts. *Id.* at 335.

Rossbach conflates her entitlement to a jury trial on her claims with the question of whether she engaged in sanctionable conduct by committing a fraud on the court and failing to comply with her discovery obligations. Answering the latter is an exercise of the district court's equitable power, for which "a party is generally not entitled to a jury determination on the question." *Broadnax v. City of New Haven*, 415 F.3d 265, 271 (2d Cir. 2005) (emphasis omitted); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991) ("[A] court has the power to conduct an independent investigation in order to determine whether it has been the victim of fraud."). Indeed, several other circuits have held that a dismissal sanction based on fabricated evidence or Rule 37 does not require a jury trial.[8] We now join those

---

[8] *See KCI USA, Inc. v. Healthcare Essentials, Inc.*, 801 F. App'x 928, 936–37 (6th Cir. 2020) ("we have held that dismissal as a sanction does not violate the right to a jury trial"); *REP MCR Realty, L.L.C. v. Lynch*, 363 F. Supp. 2d 984, 1015 (N.D. Ill. 2005) ("document fabrication[,] . . . multiple instances of perjury and the provision of wil[l]fully false testimony in federal court [are acts] for which precedent teaches dismissal without prejudice short of trial is appropriate"), *aff'd*, 200 F. App'x 592 (7th Cir. 2006); *Pope v. Fed. Exp. Corp.*, 974 F.2d 982, 984 (8th Cir. 1992) (where key evidence in support of sexual harassment claim was manufactured, "there [wa]s no jury issue" and district court properly dismissed pursuant to its inherent power for abuse of judicial process); *Morgan v. Mass. Gen. Hosp.*, 901 F.2d 186, 195 (1st Cir. 1990) (a party who "willfully violate[s] procedural rules and orders of the district court" is not "entitled to have his case heard on the merits"); *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983) ("[A] Rule 37 dismissal does not violate

circuits and hold that a motion for sanctions, when premised on a party's fraud on the court or discovery misconduct under Rule 37, does not implicate the Seventh Amendment's jury trial guarantee. Resolving such a motion, including by imposing a case-terminating sanction, is solely within the purview of the district court as trier of fact. That is so even if, as Rossbach argues here, "issues raised [in the motion for sanctions] go to the merits of the case." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 592 (9th Cir. 1983). Here, the district court's findings of fact at the evidentiary hearing, and dismissal of the remainder of Rossbach's case based upon them, did not violate Rossbach's right to a jury trial.

Relatedly, Rossbach argues that the district court erred in making credibility determinations at the evidentiary hearing, again impermissibly usurping the role of the jury. As we note above, one of the district court's roles in resolving a motion for sanctions is to act as factfinder, a necessary corollary of which is to gauge witness credibility. "[A]ssess[ing] . . . the credibility of witnesses" at a sanctions hearing "is peculiarly within the province of the . . . . [d]istrict [c]ourt." *Mackler Prods., Inc. v. Cohen*, 225 F.3d 136, 145 (2d Cir. 2000) (internal quotation marks omitted) (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 618 (2d Cir. 1991); *accord Liebowitz v. Bandshell Artist Mgmt.*, 6 F.4th 267, 282 (2d Cir. 2021) (district court's credibility determinations at sanctions hearing are accorded "particularly strong deference" (internal quotation marks omitted));

the right to a jury trial where a party fails to comply with court-ordered discovery," nor does a district court's decision "to hold hearings to decide upon sanctions," even if "in effect determining the merits of the case.").

19

*Wyle*, 709 F.2d at 592 ("In the course of such hearings, a court will make inferences and credibility determinations from evidence received."). It was not error for the district court to assess credibility at the evidentiary hearing.

### III.   Perjury and Spoliation Findings

Appellants argue that the district court erred in its fact findings that Rossbach testified falsely and that she and Altaras spoliated evidence. We accept a district court's factual findings in support of its imposition of sanctions unless they are clearly erroneous. *West*, 167 F.3d at 779.

"A witness commits perjury if he gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from confusion, mistake, or faulty memory." *United States v. Monteleone*, 257 F.3d 210, 219 (2d Cir. 2001). Rossbach contends that the district court improperly based its perjury finding on inconsistencies between (1) her deposition and (2) her declaration and testimony at the evidentiary hearing, which she claims were not willfully false but an attempt to "merely clarif[y] her deposition testimony." Appellants' Br. 43. However, the district court's finding that Rossbach "has not given truthful testimony about how the image of the text messages was produced," App'x 405, was based on more than these inconsistencies. The district court cited the overall incredibility of Rossbach's testimony regarding the origin of the text message document, supported by evidence that the image was not a photograph taken on an iPhone X (or a photograph at all) and that the

20

depicted messages were inconsistent with text messages as they would appear on an iPhone 5 (or any iPhone). Consequently, the district court's finding that Rossbach willfully testified falsely on a material matter was not clearly erroneous.

A party spoliates evidence if (1) "the party having control over the evidence had an obligation to preserve it at the time it was destroyed"; (2) "the records were destroyed with a culpable state of mind"; and (3) "the destroyed evidence was relevant to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 162 (2d Cir. 2012). The district court found that Rossbach spoliated evidence by depriving Montefiore of access to electronically stored information on her iPhones. Specifically, she refused to provide the correct passcode to her iPhone 5 and disposed of her iPhone X during the litigation. The district court also found that Altaras facilitated this spoliation by not obtaining the correct passcode from Rossbach and by failing to take sufficient steps to ensure that her iPhones and their data were preserved. Appellants argue that Rossbach's conduct—allegedly dropping her iPhone 5 such that it could not be opened with any passcode, and trading in her iPhone X when it could not be repaired—does not establish the requisite intent to deprive Montefiore of material evidence necessary for a spoliation finding.

Even if the district court were to have credited Rossbach's testimony about the misfortunes that befell her iPhones (which it did not, finding, for example, that Rossbach intentionally withheld her correct passcode), the "culpable state of mind" for a spoliation claim

21

need not be intentional or willful, and may be found where the spoliation occurred due to negligence. *See Residential Funding Corp. v. DeGeorge Fin. Corp.*, 306 F.3d 99, 108 (2d Cir. 2002). At the least, Rossbach's failure to preserve her iPhones and their data, and Altaras's failure to ensure that his client did so, demonstrated a disregard of their discovery obligations. Thus, the district court's spoliation finding was not clearly erroneous.

## IV. Notice and Opportunity to Be Heard

Appellants also argue that they were not afforded notice and an opportunity to be heard prior to the imposition of sanctions. This argument was not preserved in the district court. *See Rossbach II*, 2021 WL 3421569, at *6 n.9 ("Rossbach and her counsel have been afforded adequate notice and opportunity to be heard in this case, and do not contend otherwise."). This court generally "will not consider an issue raised for the first time on appeal." *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 1996) (internal quotation marks omitted). Although we may, in our discretion, "consider waived arguments where necessary to avoid a manifest injustice," we rarely do so "where those arguments were available to the parties below and they proffer no reason for their failure to raise" them. *In re Nortel Networks Corp. Secs. Litig.*, 539 F.3d 129, 133 (2d Cir. 2008) (per curiam) (internal quotation and alteration marks omitted). No manifest injustice would result, as the argument could have been raised below and is plainly without merit.

Briefly, Altaras argues that he was not on notice that filing a "frivolous" cross-motion for sanctions against Montefiore, *Rossbach II*,

22

2021 WL 3421569, at \*9, could serve as a basis for sanctions. Although "only conduct explicitly referred to in the instrument providing notice is sanctionable," *Schlaifer*, 194 F.3d at 334, Altaras's assertion is belied by the record: Montefiore's opening brief in support of its motion for sanctions singled out Rossbach's "motion to sanction Defendants" as one way in which DSLG had been complicit in the multiplication of proceedings that warranted sanctions under 28 U.S.C. § 1927. App'x 258. Because the cross-motion for sanctions was just one of many ways in which Altaras multiplied proceedings, even if the district court had declined to consider the frivolous cross-motion, it would not alter the result.[9]

We likewise reject Appellants' contention that the district court erred by failing to hold oral argument on Montefiore's sanctions motion. The district court in fact allowed the parties to make closing statements at the evidentiary hearing, and in any event, where a sanctions decision is "based on well-known facts contained in the existing record," "the opportunity to submit written briefs may be sufficient to provide an opportunity to be heard." *Schlaifer*, 194 F.3d at 335.

We also easily reject Appellants' contention that criminal procedural protections were warranted because the district court's fee award was punitive, rather than compensatory. *See* Appellants' Br. 31 (citing *Virginia Props., LLC v. T-Mobile Ne. LLC*, 865 F.3d 110, 114

---

[9] The same can be said of the district court's citation to another case in which DSLG was sanctioned, which in any event was not error. *See Liebowitz*, 6 F.4th at 292–93 (considering attorney's repeated misconduct as a basis for sanctions).

23

(2d Cir. 2017) ("Sanctions . . . that are punitive rather than compensatory . . . may not be imposed without procedural guarantees applicable in criminal cases." (internal quotation marks omitted))). The district court awarded Montefiore only its attorneys' fees, costs, and expenses associated with Rossbach's misconduct. Appellants do not suggest, and it is not the case that, any component of this compensatory award could be construed as a punitive sanction under the factors our case law considers. *See Mackler*, 225 F.3d at 142.

## V.    Dismissal and Monetary Sanction Against Rossbach

Rossbach argues that the district court erred in several respects in imposing sanctions against her. This court "review[s] all aspects of a [d]istrict [c]ourt's decision to impose sanctions for abuse of discretion." *Schlaifer*, 194 F.3d at 333. We are mindful, however, that because a "district court [imposing sanctions] is accuser, fact finder and sentencing judge all in one, our review is more exacting than under the ordinary abuse-of-discretion standard." *Wolters Kluwer Fin. Servs., Inc. v. Scivantage*, 564 F.3d 110, 113–14 (2d Cir. 2009) (internal quotation marks and citation omitted). In particular, "we require a high degree of specificity in the factual findings of lower courts upon which sanctions for bad faith are based." *Virginia Props.*, 865 F.3d at 113 (internal quotation marks omitted).

As to Rossbach, the district court imposed a case-terminating sanction under its inherent power and, in the alternative, under Federal Rule of Civil Procedure 37(e), and a monetary sanction under its inherent power. A federal court may "exercise its inherent power to sanction a party or an attorney who has acted in bad faith,

24

vexatiously, wantonly, or for oppressive reasons." *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (internal quotation marks omitted). A "primary aspect" of the discretion that attends a federal court's inherent power "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process. . . . [O]utright dismissal of a lawsuit . . . is a particularly severe sanction, yet is within the court's discretion." *Chambers*, 501 U.S. at 44–45. Rule 37(e) provides that if a party fails to preserve electronically stored information, the district court may, "upon finding that the party acted with the intent to deprive another party of the information's use in the litigation . . . dismiss the action or enter a default judgment." Fed. R. Civ. P. 37(e).

With respect to the case-terminating sanction, Rossbach argues that the district court abused its discretion by failing to consider lesser sanctions prior to dismissing the case. "[A] district court [is required to] at least consider lesser remedial measures before imposing" the sanction of dismissal. *Shepherd v. Annucci*, 921 F.3d 89, 97 (2d Cir. 2019). Here, the district court expressly considered lesser sanctions, stating that "[a] lesser sanction—such as a monetary sanction, the exclusion of evidence, or an appropriate instruction to the jury at trial—would be insufficient to remedy the impact of [Rossbach's] misconduct or to deter future misconduct." *Rossbach II*, 2021 WL 3421569, at *7. Rossbach argues that the district court "failed to meaningfully consider *why* any lesser sanction would be insufficient." Appellants' Br. 47 (emphasis added). Not so. The district court explained that permitting the case to proceed to trial would be a futile waste of judicial resources, given that no reasonable juror who

25

learned "of Rossbach's campaign of willful fabrication and deception" would credit her testimony or evidence. *Rossbach II*, 2021 WL 3421569, at *7.

Rossbach next argues that the district court abused its discretion in imposing sanctions against her because, in Rossbach's view, the evidence did not support the conclusion that she acted in bad faith. "[T]he sanction of dismissal with prejudice . . . should be used . . . only upon a finding of willfulness, bad faith, or reasonably serious fault." *Mitchell v. Lyons Pro. Servs., Inc.*, 708 F.3d 463, 467 (2d Cir. 2013) (internal quotation marks and citations omitted). Likewise, our "case law is clear that a district court may not impose attorney's fees as a sanction without first making an explicit finding that the sanctioned party, whether a party or a party's counsel, acted in bad faith in engaging in the sanctionable conduct." *Wilson v. Citigroup, N.A.*, 702 F.3d 720, 724 (2d Cir. 2012) (per curiam).

The district court expressly found that Rossbach "willfully and in bad faith fabricated evidence in this action and attempted to mislead" the district court. *Rossbach II*, 2021 WL 3421569, at *6. Rossbach argues that this conclusion was improper because it was "predicated on factual findings that are still the subject of dispute between the Parties and their respective forensic experts." Appellants' Br. 40. But the dispute has been resolved, albeit not in Rossbach's favor. The district court acted within its discretion in admitting and weighing evidence, assessing witness credibility, making factual findings, and ruling against Rossbach. *See, e.g., Schlaifer*, 194 F.3d at 335–36; *Liebowitz*, 6 F.4th at 282; *cf. Mackler*, 225

26

F.3d at 145. The district court did not abuse its discretion in imposing a case-terminating and monetary sanction against Rossbach.

## VI.    Monetary Sanction Against Altaras and DSLG

Altaras and DSLG argue that the district court erred because it did not make the requisite finding of Altaras's "bad faith" to impose a sanction on them. As with the district court's imposition of sanctions against Rossbach, we review for abuse of discretion, *Schlaifer*, 194 F.3d at 333, mindful of the greater specificity in factual findings required to support sanctions based on bad faith, *see Virginia Props.*, 865 F.3d at 113.

The district court imposed on Altaras and DSLG the same monetary sanction of Montefiore's attorneys' fees, costs, and expenses that it imposed on Rossbach, under its inherent power and 28 U.S.C. § 1927. A federal court may "exercise its inherent power to sanction . . . an attorney who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Ransmeier*, 718 F.3d at 68 (internal quotation marks omitted). Section 1927 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. A law firm may be sanctioned for the acts of its attorneys under both the district court's

27

inherent power and § 1927. *Enmon v. Prospect Cap. Corp.*, 675 F.3d 138, 147–48 (2d Cir. 2012).

When a district court invokes its inherent power to impose a sanction of attorneys' fees or to punish actions by an attorney that are taken on behalf of a client, "the district court must make an explicit finding of bad faith." *United States v. Seltzer*, 227 F.3d 36, 41–42 (2d Cir. 2000). The imposition of sanctions pursuant to § 1927 similarly requires a finding of bad faith. *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986); *Sakon v. Andreo*, 119 F.3d 109, 114 (2d Cir. 1997).

We have recognized an exception to the bad faith requirement when an attorney's misconduct is not related to the representation of a client, but rather to his or her independent professional responsibility as an attorney. *See Seltzer*, 227 F.3d at 41–42; *Wilder*, 258 F.3d at 130. In such circumstances, "the district court need not find bad faith before imposing a sanction," *Seltzer*, 227 F.3d at 42, but instead may impose sanctions if it finds that the attorney "negligently or recklessly failed to perform his responsibilities as an officer of the court," *Wilder*, 258 F.3d at 130. *See In re Pennie & Edmonds LLP*, 323 F.3d 86, 93 (2d Cir. 2003) (noting the different standards for sanctions tied to an attorney's dual roles, with citation to *Seltzer* and *Wilder*). As *Seltzer* recognized, however, a sanction of attorneys' fees—whether premised on a lawyer's representational or non-representational conduct—must always be supported by a finding of bad faith. *Wilson*, 702 F.3d at 724 (citing *Seltzer*, 227 F.3d at 41–42).

In *Rossbach II*, the sanctions opinion and order, the district court set out the correct legal standard, noting that the imposition of

28

sanctions under both its inherent power and § 1927 must be supported by a finding of bad faith. However, in applying the law, the district court did not make the required "explicit finding of bad faith" to impose the sanction it did against Altaras and DSLG. *Seltzer*, 227 F.3d at 42; *Wilson*, 702 F.3d at 724.

First, the monetary sanction imposed on Altaras and DSLG consisted of Montefiore's attorneys' fees, costs, and expenses associated with addressing Rossbach's misconduct. As we have explained, an explicit finding of bad faith is always required prior to the imposition of an attorneys' fees sanction, and here the district court's failure to so find while imposing such a sanction exceeded its discretion. *Wilson*, 702 F.3d at 724; *see Seltzer*, 227 F.3d at 41–42.

Second, Altaras's misconduct recounted by the district court in support of the sanction was representational, which independently necessitates an explicit finding of bad faith. The cited misconduct pertained to the investigation and prosecution of Rossbach's claims, the monitoring of Rossbach's discovery obligations and testimony, the submission of evidence, and the filing of motions. These actions were "integrally related to [Altaras's] role as an advocate for his . . . client," *Seltzer*, 227 F.3d at 40, and not to his independent professional responsibility as an officer of the court. *Cf., e.g., Palmer v. Simon's Agency, Inc.*, 833 F. App'x 838, 839 (2d Cir. 2020) (summary order) (non-representational conduct may include, for example, compliance with local rules, such as timely submission of motion papers). Yet instead of finding bad faith as is required for representational conduct, the district court applied *Wilder*'s standard for non-representational conduct, finding that Altaras "negligently or

29

recklessly failed to perform his responsibilities as an officer of the court," including by disobeying the New York Rules of Professional Conduct. *Rossbach II*, 2021 WL 3421569, at *8 (quoting *Wilder*, 258 F.3d at 130). As is the case with an attorneys' fee sanction, a district court's failure to make an explicit finding of a lawyer's bad faith prior to imposing *any* sanction for representational conduct is a legal error that constitutes an abuse of discretion. *See Seltzer*, 227 F.3d at 41–42.

We have acknowledged that an attorney's "bad faith may be inferred where the action is completely without merit." *In re 60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000). We note that the district court here stated, in summarizing the law, that "[w]hen an attorney continues to defend a complaint even after learning of facts rendering the complaint 'fatally flawed,' he has engaged in bad faith conduct." *Rossbach II*, 2021 WL 3421569, at *6 (alteration marks omitted) (quoting *Liebowitz*, 6 F.4th at 284). The district court later explained, as one factor supporting its sanction, that "even after [Altaras] should have realized that Rossbach's complaint was based on her false allegations, he stood by" it. *Id.* at *9. Taking these statements together, the district court may have implicitly found Altaras's conduct to have been undertaken in bad faith. An implicit finding, however, is not enough.

The district court erred by imposing these sanctions without an explicit finding of Altaras's bad faith. Our concern with this omission is compounded by the explicit finding that the district court did make: that Altaras's misconduct met *Wilder*'s lesser "negligent[] or reckless[]" standard for nonrepresentational conduct and that Altaras "still fails to understand the nature of his obligations as an officer of

30

the court." *Rossbach II*, 2021 WL 3421569, at *8–*9 (quoting *Wilder*, 258 F.3d at 130).

We therefore hold that the district court erred by failing to expressly make the finding of bad faith required to support the sanction it imposed against Altaras and DSLG and, accordingly, vacate and remand for application of the correct legal standard. On remand, the able district court may assess in its discretion whether Altaras's misconduct—including his insistence on defending a complaint founded on obviously fabricated evidence, or other actions—amounted to bad faith.

## VII.  Attorneys' Fee Calculation

Appellants argue that the district court erred in awarding Montefiore "unreasonable and excessive" attorneys' fees. Appellants' Br. 52. "We review a district court's award for attorney's fees, expenses, and costs for abuse of discretion," and "[g]iven the district court's inherent institutional advantages in this area, our review . . . is highly deferential." *Lilly v. City of New York*, 934 F.3d 222, 227 (2d Cir. 2019). We are also mindful that the goal of a fee award "is to do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011).

Appellants contest the number of hours billed by Montefiore's counsel as "highly suspect" and dispute entire categories of fees and costs awarded by the district court, such as those incurred prior to and including the evidentiary hearing and in the preparation of Montefiore's fee application. Appellants' Br. 53. The district court reviewed Montefiore's fee application and determined that the

majority of the requested fees "were integrally connected with the conduct necessitating the imposition of sanctions and [that] the hours expended on those tasks were reasonable." *Rossbach IV*, 2021 WL 4940306, at *2. Contrary to the thrust of Appellants' argument, a district court need not conduct an "item-by-item" analysis of a fee application, *Lunday v. City of Albany*, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam), and vague time entries or block billing may be permissible so long as the district court is able "to conduct a meaningful review of the hours requested," *Restivo v. Hessemann*, 846 F.3d 547, 591 (2d Cir. 2017). It is apparent that the district court here conducted a sufficiently detailed review. Indeed, the district court struck a category of fees requested by Montefiore as unrelated to its motion for sanctions.

Nor was it an abuse of discretion for the district court to include in its calculation Montefiore's time spent in preparing its fee application. "Reasonable attorneys' fees for preparing the fee application are compensable." *Id.* at 592. Those fees were reasonably "associated with addressing Rossbach's fabrication," as the district court specified in its sanctions opinion and order.[10] *Rossbach II*, 2021 WL 3421569, at *8. Under this court's "highly deferential" review, the

---

[10] The same is true of fees incurred by Montefiore prior to and during the evidentiary hearing. The district court found that Altaras's opposition to such fees, along with Appellants' blanket opposition to the monetary sanction, was untimely and should have been raised in a motion for reconsideration of the sanctions opinion and order, instead of in opposition to Montefiore's fee application. Appellants argue that this constitutes an abuse of discretion because "there is no 'motion for reconsideration' in the Federal Rules of Civil Procedure," Appellants' Br. 57, but ignore the operation of Local Rule 6.3, which so provides. S.D.N.Y. L. Civ. R. 6.3.

district court did not abuse its discretion in calculating Montefiore's fee award.  *Lilly*, 934 F.3d at 227.

## VIII.  Motions for Extensions of Time, Reconsideration, and Stay Pending Appeal

Finally, Rossbach variously challenges the district court's denial of her motions for extensions of time, reconsideration of the denial of her motion for sanctions against Montefiore, and a stay of the district court proceedings pending the present appeal.  We have carefully reviewed all of these arguments and find that the district court did not abuse its discretion in denying the specified motions.

## CONCLUSION

For the foregoing reasons, we **VACATE** the portion of the district court's judgment imposing sanctions on Altaras and DSLG and **REMAND** for further proceedings consistent with this Opinion. We **AFFIRM** the judgment of the district court in all other respects.

33