*Isaacs v. Zimmerman*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term 2024

(Argued: November 25, 2024          Decided: August 13, 2025)

No. 23-7492

_____

J.C.,

Plaintiff,

-v.-

ROBERT ALLEN ZIMMERMAN, AKA BOB DYLAN,

Defendant-Appellee,

-v.-

DANIEL W. ISAACS, PETER J. GLEASON,

Respondents-Appellants.[*]

_____

Before:      LIVINGSTON, *Chief Judge*, CALABRESI, and MERRIAM, *Circuit Judges*.

---

[*] The Clerk is respectfully instructed to amend the caption as set forth above.

Respondents-Appellants Daniel W. Isaacs and Peter J. Gleason, attorneys for plaintiff J.C., appeal from a decision and order of the United States District Court for the Southern District of New York (Failla, *J.*) granting defendant Robert Allen Zimmerman's motion for sanctions. On appeal, Isaacs and Gleason argue that the district court abused its discretion by imposing sanctions pursuant to Federal Rule of Civil Procedure 37. We disagree. Accordingly, we **AFFIRM** the district court's imposition of sanctions.

FOR RESPONDENTS-APPELLANTS:  NATHANIEL B. SMITH, Law Office of Nathaniel B. Smith, New York, NY.

FOR APPELLEE:  BRIAN ASCHER (Orin Snyder, Jeremy Bunting, Alexandra Perloff-Giles, Carolyn Ye *on the brief*), Gibson, Dunn & Crutcher LLP, New York, NY.

DEBRA ANN LIVINGSTON, *Chief Judge*:

The question in this case is whether the district court abused its discretion by imposing modest monetary sanctions pursuant to Federal Rule of Civil Procedure 37 against attorneys who violated a discovery order of the court, failed to meet agreed-upon discovery deadlines, and, more generally, failed to abide by their discovery obligations despite repeated warnings. We conclude that it did not. Accordingly, we **AFFIRM** the district court's imposition of sanctions.

## BACKGROUND

In August 2021, plaintiff J.C. filed a complaint in state court alleging that defendant Robert Allen Zimmerman (AKA Bob Dylan) "sexually abused" her for

2

a six-week period "between April and May of 1965" when she was 12 years old.[1]

J. App'x at 16–28. She was represented by respondents-appellants Daniel W. Isaacs and Peter J. Gleason. J.C. specifically alleged that Zimmerman "befriended and established an emotional connection with [her] to lower her inhibitions with the object of sexually abusing her, which he did, coupled with the provision of drugs, alcohol[,] and[] threats of physical violence." J. App'x at 17. J.C. filed an amended complaint on December 27, 2021, which modified the period of alleged abuse to "the spring of 1965." J. App'x at 32. Zimmerman, represented by Orin Snyder, as well as other attorneys from Gibson, Dunn & Crutcher, LLP, removed the case to federal court.

On March 18, 2022, the district court held a preliminary conference and adopted the parties' proposed Rule 26 case management plan, telling the parties: "I'm not very interested in extending discovery deadlines so, please, get started on your discovery and come to me with any problems." *Id.* at 84. The court subsequently entered an order formally adopting the case management plan (the "March 18 Scheduling Order"). The order required, *inter alia*, that the parties

---

[1] J.C. brought her otherwise time-barred claims pursuant to the claim-revival provision of New York's Child Victims Act (the "CVA"), N.Y. C.P.L.R. § 214-g, which permitted plaintiffs to assert claims arising from their sexual abuse as minors during a two-year filing window from August 14, 2019, to August 14, 2021.

"conduct discovery in accordance with the Federal Rules of Civil Procedure." *J.C. v. Zimmerman*, No. 1:22-cv-323(KPF) (S.D.N.Y. Mar. 18, 2022), Dkt. No. 21 at 2. As relevant here, Federal Rules of Civil Procedure 33(b)(2) and 34(b)(2) mandate that a party must serve its answer to interrogatories "within 30 days after being served with the interrogatories" and respond to requests for production "within 30 days after the parties' first Rule 26(f) conference," except in certain circumstances inapplicable here. Fed. R. Civ. P. 33(b)(2) (interrogatories); Fed. R. Civ. P. 34(b)(2) (requests for production).

## I. First Missed Deadline and May 24 Order

Zimmerman served his first request for production of documents ("RFPDs") and interrogatories on March 18, 2022—the same day the district court entered its scheduling order. One month later, on April 17, 2022—the deadline for J.C.'s responses to the RFPDs and interrogatories under Rules 33(b)(2) and 34(b)(2), which was incorporated into the March 18 Scheduling Order—Isaacs emailed defense counsel indicating that he would need two more weeks to respond, *i.e.*, until May 2. However, despite repeated additional assurances by Isaacs over the following weeks that he would respond to the discovery requests, he did no such thing. On May 16—nearly a month after the original deadline and two weeks after the extended deadline—J.C.'s counsel still had not responded to the RFPDs,

4

forcing Snyder to file a motion to compel. Notwithstanding Judge Failla's Individual Rules of Practice in Civil Cases (which required Isaacs to file a response within three days) Isaacs responded to the defense motion seven days later, admitting he "had promised to provide responses [to the RFPDs] but failed to do so" due to various professional obligations as well as a trip to Ghana. J. App'x at 87. Isaacs represented to the district court that he would provide the RFPD responses in a week.

Construing Isaacs' response as a motion for an extension of time, the district court granted that motion on May 24, 2022, and issued an order (the "May 24 Order") providing:

> The Court is in receipt of Defendant's May 16, 2022 letter and Plaintiff's . . . responsive letter. Plaintiff shall serve her responses on or before **May 30, 2022**. More broadly, Plaintiff is cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated.

*Id.* at 88 (emphasis in original).

## II. Second Missed Deadline and June 2 Order

On May 30, Isaacs served responses and objections to Zimmerman's first set of interrogatories but failed to respond to Zimmerman's RFPDs, which were by then six weeks past due. The next day, Zimmerman requested a conference with

5

the district court to address J.C.'s continued failure to meet her discovery obligations. Isaacs finally provided responses to the RFPDs on the following day, June 1, at which point Zimmerman sent a letter to the district court withdrawing his request for a conference.[2]

On June 2, 2022, the district court issued an order (the "June 2 Order") stating:

> The Court is in receipt of Defendant's June 1, 2022, and May 31, 2022 letters which follow Defendant's May 16, 2022 letter raising similar issues related to Plaintiff's noncompliance with the discovery deadlines in this case. The Court has previously warned Plaintiff that failure to abide by the discovery deadlines will not be tolerated. The Court expects that Plaintiff will heed that warning and meet her obligations in this case without Court intervention. If, however, Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time.

*Id.* at 92 (internal citations omitted).

## III.  Third Missed Deadline and July 15 Order

Two weeks later, on June 16, the parties agreed that J.C.'s document production would be "substantial[ly] complet[ed]" by June 30, 2022—"some ten

---

[2] That same day, defense counsel provided J.C.'s counsel with about 60 emails to or from J.C. that the defense had received in the course of third-party discovery. According to the district court, the majority of these emails were exchanged between J.C. and other individuals in the months following the filing of her complaint in New York State Supreme Court, but before removal to federal court. The court, upon review of the emails later in the proceedings, agreed with Zimmerman's counsel that "they call into question the veracity of [J.C.'s] allegations." Special App'x at 7.

months after the [c]omplaint was first filed," and well over three months after the service of Zimmerman's initial set of RFPDs. *Id.* at 94. When that date arrived, however, Isaacs produced, according to a letter motion filed by Zimmerman, only "a paltry 49 pages of documents" that omitted "material documents" Zimmerman's counsel knew to exist based on the third-party discovery that counsel had undertaken. *Id.* For example, "[J.C.] did not produce a single email or text to or from anyone," despite the fact that Zimmerman was "aware of many responsive and relevant email communications [J.C.] has exchanged with at least six individuals related to her claims, many of which cast doubt on the veracity of her claims." *Id.* These email exchanges were directly responsive to a request in the first set of RFPDs for "[a]ny and all written communications (including, but not limited to, e-mails, letters, voicemails, and text messages) between Plaintiff and anyone . . . related to Plaintiff's claims in this matter . . . ." *Id.* (internal quotation marks omitted; alterations in original).

On July 1, 2022, Zimmerman's counsel wrote to the court once again seeking judicial intervention. Defense counsel expressed concern regarding "the adequacy of [Isaacs and Gleason's] pre-suit investigation" and expressly noted that J.C.'s production was "far from complete and omits material documents we know

7

exist." *Id.* at 94. Isaacs filed a responsive letter in which he represented that Gleason had "conduct[ed] multiple interviews" of J.C., and "review[ed] her documents." *Id.* at 97. Isaacs confirmed that he himself had "independently reviewed these materials." *Id.* Isaacs added, *inter alia*, that he and Gleason were "continu[ing] to diligently search for additional documents responsive to [Zimmerman's] production demand" and noted that "discovery is an ongoing process." *Id.* at 98. The district court ordered the parties to appear for a telephonic conference on July 15.

At the conference, the district court asked Isaacs whether "there [are] now [any responsive] texts or emails in [J.C.'s] possession, custody, or control." *Id.* at 102. In response, Isaacs admitted that J.C. had produced several more responsive texts and/or emails to him in the last few days. He represented that "once I give [defense counsel] these last few text messages, which I just received, we have nothing other, at this point, to provide." *Id.* at 103. He also confirmed that it was the July 1 letter from Zimmerman that (as the court put it) "clued [Isaacs and Gleason] into the fact that [J.C.] may have responsive texts or emails," reiterating that J.C. had "some texts, a couple of emails, but not much," and that he would "send them." *Id.* at 105.

Zimmerman's counsel, Snyder, then represented that he was aware of "dozens" of responsive emails "directly relevant to this case" which he had received from third parties, "including . . . the plaintiff's relatives." *Id.* at 107. Snyder argued that Isaacs' claim that he was unaware that any responsive emails existed was implausible, given that the third-party emails in Snyder's possession had been produced to Isaacs "weeks ago" in accordance with the rules for third-party production. *Id.* at 118. In fact, at a deposition on the preceding day (which Isaacs attended) defense counsel had offered many of these emails into evidence, in Isaacs' presence. Gleason confirmed that he, too, was present at a "previous deposition of the plaintiff's sister" where defense counsel produced "16 pages . . . of certain emails" of which Gleason was previously unaware. *Id.* at 140.

The court expressed concern that Isaacs was "not pushing back enough with [his] client" and noted that it "[did not] think it[] [was] Mr. Snyder and his team's job to identify . . . what you and your client should already know to produce." *Id.* at 115. It further noted:

> [A]t some point, I actually have to abide by the written warnings that I give, and so I've tried, as hard as I can, to give you latitude and space to work out these discovery issues, but at some point, I'm just going to come to believe that you are not abiding by my orders or that your client is incapable of providing truthful responses to discovery issues. And that will be a problem, and you have to know that that's the case.

9

I don't know how to tell you that there is a line that you're about to cross, but I am saying – and I think this is something I'm comfortable saying right now – if it turns out that you start producing things after the 22nd of July, or you start producing things beyond the 15th of August, I absolutely am going to entertain sanctions motions because I think it's ridiculous.

*Id.* at 117.  Although defense counsel moved for sanctions; the court ultimately

"deferr[ed]" its decision, noting:

I'm not going to do it today.  I have every reason to believe, although I really hope to be proven wrong, that sometime around the 23rd of July or the 11th of August or the 6th of August, [] defense counsel is going to believe either that there are things that have not been produced, and therefore that sanctions are warranted, or that so much has been produced that should have been produced before today's date, that sanctions are warranted.  So I have every expectation that there's a sanctions motion in the offing.  I would just like to have one and not two.

*Id.* at 121.  It ended the conference with an explicit warning:

I don't know, Mr. Isaacs, how to tell you more strongly and more honestly that I am disappointed and dissatisfied with the productions that have been made and with your and your client's conduct in discovery.  I leave it at that.  You've had every warning.  You've had it oral, you've had it written, you don't need me to repeat it again.  For the love of God, produce these materials because you understand the consequences if you don't.

*Id.* at 122.

After the conference, the district court ordered:

1. That Plaintiff will produce all documents responsive to Defendant's First Set of Requests for Production on or before **July 22, 2022**;

10

2. That Plaintiff will respond to Defendant's Second Set of Requests for Production on or before **August 10, 2022**; and

3. That Plaintiff will produce all documents responsive to Defendant's Second Set of Requests for Production on or before **August 15, 2022**.

*Id.* at 123 (the "July 15 Order").

## IV.    Voluntary Dismissal with Prejudice

On July 19, 2022—four days later, and only three days before all documents responsive to Zimmerman's initial set of RFPDs were required to be produced—Isaacs informed the court that he and Gleason had been "discharged by [J.C.] as her attorneys." *Id.* at 124. The court scheduled a conference for July 28, at which it noted that Isaacs and Gleason had not properly moved to withdraw and asked them to explain the situation. Isaacs and Gleason asserted that, following the July 15 conference, they met with J.C. on or around July 18, to request that she produce additional responsive documents. The next day, on July 19, Gleason met with J.C. again at which point J.C. produced three boxes of papers, but would not permit Gleason to take the boxes with him. Gleason purportedly told J.C. that, if she did not provide him with the documents, he and Isaacs would move to withdraw as counsel or, in the alternative, she could terminate their services. After Gleason left, he and Isaacs received an email from J.C. purportedly terminating their services.

11

Following this explanation, the district court reminded Isaacs and Gleason that "the real issue" was the discovery deadlines "that weren't complied with." *Id.* at 144. The court made clear that "it's not as though the slate is wiped clean and we start again. New counsel succeeds to the state of the case that we are in now." *Id.* at 159–60. After an exchange with Snyder, the court noted that it was "waiting" on "the issue of sanctions," and that "[r]ight now, before me, [J.C. is] still [Isaacs and Gleason's] client." *Id.* at 159. The court permitted a recess for Isaacs and Gleason to consult with J.C., who was present in the courtroom, after which Isaacs advised the court that J.C. sought to withdraw her complaint with prejudice. After confirming with J.C. herself that she desired to discontinue her action with prejudice, the district court ordered that the case be dismissed and gave defense counsel a week to bring any motion for sanctions.

## V. Sanctions

Zimmerman subsequently filed a motion seeking sanctions in the amount of $50,000 against Isaacs and Gleason (but not against J.C. herself). The district court granted in part Zimmerman's request for sanctions under Rule 37(b)(2), reasoning that "some sanction should be imposed on [p]laintiff's [a]ttorneys for

12

their noncompliance with one or more [c]ourt orders regarding discovery."[3] Special App'x at 18–19. The court noted that J.C., and by extension Isaacs and Gleason, had violated the court's May 24 Order by producing responses to Zimmerman's initial RFPDs a day later than the court-imposed May 30, 2022, deadline. Counsel then failed in the succeeding weeks and months to produce "nearly all responsive documents in [J.C.'s] possession, as was made clear in subsequent discovery disputes between the parties." *Id.* at 20.

The district court expressly declined to predicate sanctions on the July 15 Order because, drawing all permissible inferences in favor of plaintiff's counsel, compliance with that order "appears to have been outside of [Isaacs and Gleason's] control." *Id.* at 22 n.10. However, the court did consider "the run-up

---

[3] Rule 37(b)(2)(A) of the Federal Rules of Civil Procedure authorizes courts, *inter alia*, to issue just orders addressing the failure of a party "to obey an order to provide or permit discovery." Such orders may, among other things: stay further proceedings until a discovery order is obeyed; render a default judgment against the disobedient party; or dismiss an action in whole or part. The Rule further provides:

> Instead of or in addition to [such orders], the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(b)(2)(C).

The district court further noted that, while it recognized its authority to impose sanctions under its "inherent power" or pursuant to 28 U.S.C. § 1927, it declined to do so because it could not, on the record before it, "conclude that either lawyer acted in bad faith." Special App'x at 14 n.7.

to and content of the July 15 conference," *id.*, in making findings pursuant to this Court's decision in *Agiwal v. Mid Island Mortgage Corporation*, 555 F.3d 298 (2d Cir. 2009). The district court concluded that plaintiff's counsel had demonstrated a "blasé attitude towards their discovery obligations (and to the Court's May 24 Order in particular) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing." Special App'x at 23.

Applying the factors we identified in *Agiwal* as potentially useful in evaluating a district court's exercise of discretion under Rule 37 (the "*Agiwal* factors"), the district court found that (1) Isaacs and Gleason's noncompliance was "willful"; (2) the court's proposed monetary sanctions, "which [are] but a fraction of the fees and expenses incurred by [Zimmerman], [are] at the less severe end of the sanction spectrum"; and (3) Issacs and Gleason's noncompliance "persisted over a period of weeks, if not months, in the face of numerous warnings from the Court." *Id.* at 23–24. It therefore concluded that "[a]ll of the *Agiwal* factors . . . counsel in favor of sanctions." *Id.* at 24. The court ultimately imposed $5,000 in

14

sanctions against Isaacs and $3,000 against Gleason, reasoning that an award of full expenses would be "unjust" under Rule 37. *Id.* at 27, 29.[4]

## DISCUSSION

On appeal, Isaacs and Gleason argue that the district court (1) abused its discretion by imposing Rule 37 sanctions, including by failing to make sufficiently specific findings as to whether they each violated a particular discovery order; (2) failed to properly apportion fault between them; (3) erred by failing to hold a hearing prior to imposing sanctions; and (4) erred by imposing sanctions that were unjust under the circumstances. We disagree on all counts and address each argument in turn.

## I. Imposition of Rule 37 Sanctions

The crux of Isaacs and Gleason's first argument is that the district court (1) did not premise the sanctions on a clearly articulated order requiring specified discovery; and (2) improperly concluded that the *Agiwal* factors all weighed in favor of imposing sanctions. We disagree.

We review a district court's imposition of sanctions pursuant to Rule 37 for abuse of discretion. *Yukos Cap. S.A.R.L. v. Feldman*, 977 F.3d 216, 234 (2d Cir. 2020).

---

[4] The district court also granted Isaacs and Gleason's request to withdraw as counsel for J.C., which was made as a cross-motion to the motion for sanctions. Special App'x at 13.

In doing so, we must remain "mindful of the Supreme Court's repeated admonition that this standard of review means what it says: that '[t]he question, of course, is not whether [we] would as an original matter have [applied the sanction]; it is whether the District Court abused its discretion in so doing.'" *S. New England Tel. Co. v. Glob. NAPs Inc.*, 624 F.3d 123, 143 (2d Cir. 2010) (quoting *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) (per curiam)). "An abuse of discretion occurs when a district court bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or renders a decision that cannot be located within the range of permissible decisions." *Yukos Cap. S.A.R.L.*, 977 F.3d at 234 (internal quotation marks omitted).

"Rule 37 gives a district court the authority to impose 'just' sanctions on a party who fails to comply with a discovery order." *Kyros L. P.C. v. World Wrestling Ent., Inc.*, 78 F.4th 532, 545 (2d Cir. 2023) (quoting Fed. R. Civ. P. 37(b)(2)(A)), *cert. denied*, 144 S. Ct. 822 (2024). "Both logic and the text of Rule 37(b)(2)(C) dictate that a court may impose sanctions in a targeted way against the actors whom it identifies as responsible for misconduct, whether those be parties, their attorneys, or both." *Id.* at 546. The rule sets forth specific examples of sanctions—e.g., dismissing the action or rendering a default judgment against the disobedient

16

party—and instructs that "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(A), (C).

Rule 37 thus "places the burden on the disobedient party to avoid [an award of] expenses." *Selletti v. Carey*, 173 F.3d 104, 110 (2d Cir. 1999) (quoting Fed. R. Civ. P. 37(b) advisory committee's note to 1970 amendment). And while Rule 37 sanctions must be based on the violation of a "clearly articulated order of the court requiring specified discovery," *see Daval Steel Prods. v. M/V Fakredine*, 951 F.2d 1357, 1363 (2d Cir. 1991), "it is clear that any failure to disclose, regardless of the reason for it, brings the sanctions of Rule 37 into play." 8B Wright & Miller's Federal Practice & Procedure § 2284 (3d ed.) (citing *Societe Internationale Pour Participations Industrielles Et Commerciales, S. A. v. Rogers*, 357 U.S. 197, 208 (1958) (holding that after "a party 'refuses to obey' [within the meaning of Rule 37(b)(2)] [] by failing to comply with an order," "the willfulness or good faith of [the party] . . . are relevant only to the path which the District Court might follow in dealing with [the party's] failure to comply")). Once Rule 37 is triggered, "[t]he district court is free to consider the full record in the case in order to select the

appropriate sanction." *S. New England Tel. Co.*, 624 F.3d at 144 (internal quotation marks omitted).

We have previously outlined several factors—the so-called *Agiwal* factors—that are potentially "'useful [when] evaluating a district court's exercise of discretion' to impose [Rule 37] sanctions . . . , including '(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance[;] and (4) whether the non-compliant party had been warned of the consequences of noncompliance.'" *Id.* (quoting *Agiwal,* 555 F.3d at 302). These factors "are not exclusive, and they need not each be resolved against the party challenging the district court's sanctions for us to conclude that those sanctions were within the court's discretion." *Kyros*, 78 F.4th at 546 (internal quotation marks omitted).

Isaacs and Gleason first argue that they "did not violate *any* discovery order." Appellant's Br. at 19 (emphasis added) (capitalization omitted). Not so. The district court's May 24 Order explicitly directed Isaacs and Gleason to "serve [J.C.'s] responses [to Zimmerman's interrogatories and RFPDs] on or before May 30, 2022." J. App'x at 88. It also warned that "future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules . . .

18

will not be tolerated." *Id.* Yet, Isaacs and Gleason admit that they "[did] not serve[]" "responses to the document demands . . . [on] May 30," and instead produced responses the following day on May 31.[5] Appellant's Br. at 20. This delay, however short, constitutes a violation of a "clearly articulated order of the court requiring specified discovery." *Daval Steel Prods.*, 951 F.2d at 1363.

Isaacs and Gleason next argue that even if they were one day late in serving responses, that delay alone does not justify the imposition of Rule 37 sanctions. Alone, perhaps not. But once the proverbial door to Rule 37 sanctions is opened by a discovery order violation, "[t]he district court is free to consider the full record in the case" in determining both the need for and character of a contemplated sanction. *S. New England Tel. Co.*, 624 F.3d at 144 (internal quotation marks omitted); *see also Nat'l Hockey League*, 427 U.S. at 641–42 (holding that the district court sufficiently "consider[ed] the full record in determin[ing] whether to

---

[5] Isaacs and Gleason argue that, because May 30 was Memorial Day, they "substantially compl[ied] with the May 24 Order" by serving responses to Zimmerman's RFPDs the following day on May 31. Appellant's Br. at 20 (citing Fed. R. Civ. P. 6(a)(6)(A) and S.D.N.Y. Loc. R. 6.4 (since withdrawn) (providing that "[i]f the last day of the period is a . . . legal holiday, the period continues to run until the end of the next day that is not a . . . legal holiday")). They are mistaken. Rule 6 and Local Rule 6.4 do not apply here because the district court imposed a specific *date* for compliance, rather than a *period of time*. *See* Fed. R. Civ. P. 6 advisory committee's note to 2009 amendment ("The time-computation provisions of subdivision (a) apply only when a time period must be computed. *They do not apply when a fixed time to act is set*." (emphasis added)); S.D.N.Y. Loc. R. 6.4 (discussing "period" of time). Here, the district court specified that J.C. was to act by May 30, 2022, and therefore the one-day delay was indeed a violation of the May 24 Order.

19

[impose Rule 37 sanctions] for failure to comply with discovery orders"); *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 19 (1st Cir. 1991) ("Having found . . . a violation [of a specific discovery order], we then look[] to the rest of the record and consider[] the overall behavior of the guilty party to determine whether the particular sanction imposed by the lower court was just."). In other words, in determining whether Rule 37 sanctions are warranted, the district court may "weigh not only the straw that finally broke the camel's back, but all the straws that the recalcitrant party piled on over the course of the lawsuit." *e360 Insight, Inc. v. Spamhaus Project*, 658 F.3d 637, 643 (7th Cir. 2011).

Here, straws abound, as the record is replete with instances of Isaacs and Gleason "fail[ing] to discharge their discovery obligations under the relevant law and [the district] [c]ourt's orders." Special App'x at 23. Prior to violating the court's May 24 Order, Isaacs and Gleason had already missed the original 30-day deadline to respond to Zimmerman's interrogatories and RFPDs pursuant to Rules 33 and 34, as well as multiple extended deadlines.[6] *See* J. App'x at 85. And despite

---

[6] Indeed, although the district court based its imposition of sanctions principally on the violation of the May 24 Order, we note that Isaacs and Gleason violated the discovery deadlines imposed by Rules 33(b)(2) and 34(b)(2) and—by extension—the March 18 Scheduling Order. That order explicitly provided that "[t]he parties are to conduct discovery in accordance with the Federal Rules of Civil Procedure." *J.C. v. Robert Allen Zimmerman*, No. 1:22-cv-323(KPF) (S.D.N.Y. Mar. 18, 2023), Dkt. No. 21 at 2. Given the clear violation of the May 24 Order in this case, we need not decide whether Isaacs and Gleason's violation of the March 18 Scheduling Order provides an independent basis for sanctions. We note, however, that Rule

20

the explicit warnings from the court in the May 24 Order and again in the June 2 Order, Isaacs and Gleason subsequently missed an agreed upon deadline for "substantial completion" of document production by June 30, 2022. *Id.* at 94. At the telephonic conference held on July 15 in the wake of that failure, Isaacs avowed that it was only Zimmerman's July 1 letter that had "clued [him in]" to the possibility that J.C. could have responsive texts and emails. *Id.* at 105. But the district court determined that even this claim is belied by the record, which reveals that, on June 1, Zimmerman "provided [Isaacs and Gleason] with some 60 emails to or from [J.C.] that [he] had received in response to third-party subpoenas issued to [J.C.'s] relatives." Special App'x at 20. Moreover, Isaacs and Gleason were each present for at least one deposition during which Zimmerman's attorneys offered some of these responsive emails into evidence. J. App'x at 112–13 (Snyder noting that "Mr. Isaacs was in the deposition yesterday, and he, with his own eyes, saw – because I offered into evidence – dozens of emails with his client"); *id.* at 114 (Isaacs confirming "Mr. Snyder is correct, I have those emails, I saw them"); *id.* at

37 sanctions may be triggered by a violation of a discovery conference order. *See* Fed. R. Civ. P. 37(b)(2) advisory committee's note to 1980 amendment ("New Rule 26(f) provides that if a discovery conference is held, at its close the court shall enter an order respecting the subsequent conduct of discovery. Th[is] amendment provides that [Rule 37] sanctions . . . are available for violation of the discovery conference order [as well].").

21

140 (Gleason discussing a "previous deposition of the plaintiff's sister" where defense counsel produced "16 pages . . . of certain emails" of which Gleason was previously unaware). Yet, despite having seen and/or received such documents from defense counsel, and despite their commitment to complete substantially all document production by June 30, counsel made "no effort to review [J.C.'s] accounts for responsive emails or texts, and as such continued to be in violation of the [district c]ourt's May 24 Order." Special App'x at 21.

The record also plainly supports the district court's conclusion that "the *Agiwal* factors support[] the . . . imposition of some sanction on [J.C.'s] [a]ttorneys." *Id.* at 23. The court made the following determinations:

> [Isaacs and Gleason's] blasé attitude towards their discovery obligations (and to the Court's May 24 Order in particular) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing, constitutes willfulness.

> On the issue of the efficacy of lesser sanctions, it is of course the case that [J.C.'s] withdrawal of the action with prejudice removes the option of terminal sanctions from the Court's consideration. That said, the monetary sanction the Court proposes [of $5,000 and $3,000 respectively] is but a fraction of the fees and expenses incurred by [Zimmerman], [and] is at the less severe end of the sanction spectrum. *See* [*Thani v. Hanke*, No. 20-cv-4765, 2023 WL 5744288, at *12 (S.D.N.Y. Sept. 6, 2023)] (discussing the appropriateness of monetary sanctions, described as "the mildest of sanctions" (citations omitted)).

22

As for the remaining factors, the procedural history of this case makes clear that [Isaacs and Gleason's] noncompliance with the Court's orders persisted over a period of weeks, if not months, in the face of numerous warnings from the Court. (*See, e.g.*, [Dist. Ct.] Dkt. #27 at 2 ("Plaintiff is cautioned that future failures to meet the discovery deadlines set forth in the parties' case management plan or this Court's rules of individual practice will not be tolerated."); [Dist. Ct.] Dkt. #30 at 2 ("If, however, Plaintiff continues to neglect her responsibilities in this case, the Court will take appropriate action at that time.")). All of the *Agiwal* factors, therefore, counsel in favor of sanctions.

Special App'x at 23–24.

We see no error in the district court's reasoning. While the court acknowledged that it could not fault Isaacs and Gleason for their failure to produce documents outside of their control, it also noted that it "consider[ed] the run-up and content of the July 15 conference in making . . . findings under the *Agiwal* factors." *Id.* at 22 n.10. It did not err in determining that the record evinced a "blasé attitude" towards counsels' obligations to produce responses and documents on a timely basis and in accordance with agreed upon discovery deadlines. *Id.* at 23. It is particularly telling that Isaacs and Gleason only became aware that J.C. was in possession of responsive documents after Zimmerman informed the district court of the likely existence of such documents, based on evidence that defense counsel had obtained through third-party subpoenas. Had Zimmerman's counsel not sought this third-party discovery, it is probable that

23

responsive communications in J.C.'s possession might never have come to light. And all of this transpired despite the district court's repeated, emphatic warnings that "future failures to meet the discovery deadlines . . . will not be tolerated." J. App'x at 88; *see also id.* at 92 (warning that the court "will take appropriate action" if "[p]laintiff continues to neglect her responsibilities in this case"); *id.* at 122 ("You've had every warning. You've had it oral, you've had it written, you don't need me to repeat it again."). Accordingly, we conclude that the district court did not abuse its discretion in imposing Rule 37 sanctions.

## II. Apportionment

Nor did the district court err in its apportionment of fault. "We have frequently asked the district courts, in imposing sanctions, to make careful apportionment of the costs among the responsible parties." *In re Yellen & Herstic*, 804 F.2d 191, 193 (2d Cir. 1986). Here, the court ultimately imposed a $5,000 sanction against Isaacs and a $3,000 sanction against Gleason after determining that:

> [w]hile the bulk of the discovery component of the litigation was handled by Mr. Isaacs, Mr. Gleason was copied on the relevant correspondence, participated in the relevant conferences, and appeared in the litigation as co-counsel. There is no basis to refrain from sanctioning Mr. Gleason for his actions, or inaction, in this matter, although the amount of his sanction is less than that imposed on Mr. Isaacs because of the difference in first-chair responsibilities.

Special App'x at 27–28 n.13. In sum, the district court considered the relative responsibilities of the two attorneys and apportioned sanctions accordingly. We see no abuse of discretion here.

## III. Lack of Evidentiary Hearing

We also easily dispose of Isaacs and Gleason's argument regarding the lack of an evidentiary hearing prior to the imposition of sanctions. As we have said before, "a motion for sanctions does not automatically require an evidentiary hearing." *Rossbach v. Montefiore Med. Ctr.*, 81 F.4th 124, 138 (2d Cir. 2023). Here, it is clear that Isaacs and Gleason failed to satisfy various discovery obligations and deadlines. *See, e.g.*, J. App'x at 87 (Isaacs admitting he "had promised to provide responses but failed to do so" due to various professional obligations as well as a trip to Ghana). While an evidentiary hearing may be desirable when further fact-finding is necessary, Isaacs and Gleason have not pointed to any disputed material facts that would have impacted the district court's decision to impose Rule 37 sanctions, a decision premised entirely on counsels' failure to comply with their discovery obligations despite repeated warnings. *See Rossbach*, 81 F.4th at 138 ("[A]n evidentiary hearing serves as a forum for the district court to find facts." (internal quotation marks omitted)). Accordingly, no hearing was required.

## IV. Unjustness of Sanctions

Isaacs and Gleason's final argument is that the imposition of sanctions is unjust in this case because they "did not personally violate the July 15 Order, did not counsel the violation of any court order, and took steps in good faith to secure compliance by their client of the July 15 Order." Appellant's Br. at 38. Regardless of the veracity of these assertions, they are beside the point. The district court explicitly "decline[d] to predicate sanctions on the July 15 Order." Special App'x at 22 n.10. Instead, it determined that sanctions were warranted because, *inter alia*, counsel displayed a "blasé attitude towards their discovery obligations (and to the Court's *May 24 Order in particular*) over a period of months, despite multiple directives from the Court, and despite multiple detailed explanations from defense counsel concerning what materials were missing." *Id.* at 23 (emphasis added). Thus, Isaacs and Gleason have failed to meet their burden of showing that the imposition of sanctions was unjust under the circumstances of this case. *See Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008) ("[T]he burden [is] on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust." (internal citation omitted)).

## CONCLUSION

For these reasons, we conclude that the district court did not abuse its discretion in imposing a $5,000 sanction on Isaacs and a $3,000 sanction on Gleason for their failure to meet their discovery obligations in this case. Accordingly, we **AFFIRM** the district court's decision to impose Rule 37 sanctions.