*Hemant Patel M.D., P.C. v. Bandikatla*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 24th day of November, two thousand twenty-five.

Present:

> JOHN M. WALKER,
> SUSAN L. CARNEY,
> WILLIAM J. NARDINI,
> *Circuit Judges.*

---

HEMANT PATEL, M.D., P.C.,

> *Plaintiff-Counter-Defendant-Appellant,*

> v.

THEJASWI BANDIKATLA, M.D.,

> *Defendant-Counter-Claimant-Appellee,*

SYED-BILAL AHMED, M.D., INDIVIDUALLY,
CENTRAL FLORIDA MEDICAL ASSOCIATES,

> *Defendants.*\*

24-988(L),
24-1071 (Con)

---

\* The Clerk of Court is respectfully directed to amend the case caption as set forth above.

1

For Plaintiff-Counter-Defendant-Appellant:             FITZMORE H. HARRIS, H. Fitzmore
                                                       Harris, P.C., Bronx, N.Y.

For Defendant-Counter-Claimant-Appellee:               ROSHAN D. SHAH, Shah Law Group,
                                                       LLC, New York, N.Y.

Appeal from a judgment of the United States District Court for the Southern District of New York (Jed S. Rakoff, *District Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Plaintiff-Counter-Defendant-Appellant Hemant Patel, M.D., P.C. ("HPMDPC"), appeals from a judgment entered on April 9, 2024, in the United States District Court for the Southern District of New York following a jury trial.[1]  Viewed in the light most favorable to the jury's verdict, *Mirlis v. Greer*, 952 F.3d 36, 40 (2d Cir. 2020),[2] the evidence at trial showed the following: HPMDPC owns and operates a medical practice in New York, N.Y.   Dr. Hemant Patel is the CEO and a shareholder of HPMDPC, where he works as a physician.   Defendant-Counter-Claimant-Appellee Dr. Thejaswi Bandikatla is a physician currently practicing in Florida.   Dr. Bandikatla was born in India and attended medical school in India, and came to the United States in 2012 on a J-1 exchange student visa to complete her residency at the University of Connecticut. Typically, a J-1 visa holder must return to her home country for a period of two years after the student visa expires.   However, a foreign-born doctor can obtain a J-1 visa waiver and remain in the United States if she enters into an employment contract to practice medicine in an underserved

---

[1] The case was initially assigned to Judge Lorna G. Schofield, who adjudicated, as relevant here, the motion to dismiss, motion to remand, and motions for summary judgment.  On July 16, 2022, the case was transferred to Judge Rakoff for trial.

[2] Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

2

community for at least three years and receives a sponsorship from the relevant state health department.   The foreign-born doctor's employer, in turn, must request a H-1B visa for the doctor by (1) obtaining a U.S. Department of Labor ("DOL") certification of labor conditions and (2) filing the doctor's H1-B petition and DOL certification with the U.S. Department of Homeland Security.

Dr. Patel offered Dr. Bandikatla a job at HPMDPC pursuant to this program, and the parties executed an employment contract on October 15, 2015.   Paragraph 1 of the contract provides: "Employer hereby employs Physician as a full-time doctor in Employer's medical practice for an initial three-year term commencing within 90 days of J1 waiver and H1B approval," unless the agreement is "extended or earlier terminated as provided herein."   The contract also provides, in paragraph 2, that Dr. Bandikatla "agrees to the contractual obligations set forth in section 214(*l*) of the Immigration and Nationality Act" ("INA"), which sets forth the requirements for the J-1 waiver program.   8 U.S.C. § 1184(*l*).   Section 214(*l*) provides, *inter alia*, that "the alien agrees to begin employment with the health facility or health care organization within 90 days of receiving such waiver, and agrees to continue to work for a total of not less than 3 years (*unless the Attorney General determines that extenuating circumstances exist*, such as closure of the facility or hardship to the alien, which would justify a lesser period of employment at such health facility or health care organization, in which case the alien must demonstrate another bona fide offer of employment at a health facility or health care organization for the remainder of such 3-year period)."   8 U.S.C. § 1184(*l*)(1)(C)(ii) (emphasis added).

Dr. Bandikatla started work at HPMDPC on November 3, 2016, after U.S. Citizenship and Immigration Services ("USCIS") approved her J-1 visa waiver and H-1B visa on October 12, 2016. HPMDPC did not pay her for first few days of work on the ground that those days were "training

3

days." Joint App'x at 1051−52. On March 27, 2018, Dr. Bandikatla's visa was extended to December 4, 2020. Her annual salary was $150,000.

In early 2018, Dr. Bandikatla began looking for a job in Florida due to an emergent need for her and her husband to help care for her husband's ill family members. She found an employer, Central Florida Medical Associates ("CFMA"), that was willing to sponsor her, and in August 2018, CFMA filed the required petition seeking to transfer her visa due to extenuating circumstances. On September 13, 2018, USCIS found that Dr. Bandikatla had demonstrated extenuating circumstances under Section 214(*l*) and approved the transfer of her H-1B visa to CFMA. She submitted a letter of resignation to HPMDPC's billing director on September 17, 2018, informing them that her last day of work would be October 5, 2018. No one replied to this letter.

Nevertheless, on October 9, 2018, HPMDPC sued Dr. Bandikatla for (1) fraud and fraudulent concealment; (2) breach of contract; (3) breach of fiduciary duty; and (4) *prima facie* tort, for which it sought specific performance or millions of dollars in damages, as well as an injunction that would prohibit Dr. Bandikatla from "accepting employment within a reasonable geographic area that will compete with Patel." Joint App'x at 52. The complaint also asserted a sixth cause of action for tortious interference against two John Does—stand-ins for Dr. Bandikatla's new employer—and requested millions of dollars in damages from them. Dr. Bandikatla removed the suit to federal court on the ground that she had moved to Florida before the complaint was filed and therefore that the parties were diverse. *See* 28 U.S.C. § 1332. HPMDPC moved to remand the case to state court. Judge Schofield denied the motion on December 20, 2018. HPMDPC learned the identity of Dr. Bandikatla's new employer—CFMA—via documents she submitted in opposition to his motion to remand, and substituted the

4

new employer and its principal as defendants in the place of the original complaint's John Does. Judge Schofield dismissed the claim against CFMA and its principal on May 16, 2019, but on July 16, CFMA fired Dr. Bandikatla anyway as a result of the lawsuit. She was able to find a different employer-sponsor and began work at the new employer on August 26.

Judge Schofield granted Dr. Bandikatla's motion to dismiss the amended complaint in part. The court dismissed the claims for fraud, *prima facie* tort, fiduciary duty, and breach of the implied covenant of good faith and fair dealing, which had been added in HPMDPC's First Amended Complaint. On December 20, 2019, Dr. Bandikatla counterclaimed for breach of contract for unpaid wages, violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8–107(1)(a), and New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296(1)(a), tortious interference with contract, and a violation of the Trafficking Victims Protection Act ("TVPA"), 18 U.S.C. § 1589. The TVPA makes it unlawful for anyone to knowingly provide or obtain the labor or services of a person, as relevant here, "by means of serious harm or threats of serious harm to that person or another person," "by means of the abuse or threatened abuse of law or legal process," or "by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a)(2)–(4); *see id.* § 1595(a) (civil remedy). "'[A]buse or threatened abuse of law or legal process' means the use or threatened use of a law or legal process, whether administrative, civil, or criminal, in any manner or for any purpose for which the law was not designed, in order to exert pressure on another person to cause that person to take some action or refrain from taking some action." *Id*. § 1589(c)(1). "'[S]erious harm' means any harm, whether physical or nonphysical, including psychological, financial, or reputational harm, that is sufficiently serious, under all the surrounding

5

circumstances, to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm." *Id.* § 1589(c)(2). An individual may be held liable for an attempt to violate the TVPA. *See id.* § 1594(a).

On September 17, 2021, Judge Schofield granted HPMDPC's motion for summary judgment on Dr. Bandikatla's NYSHRL, NYCHRL, and tortious interference claims as well as on her TVPA theories related to Dr. Bandikatla being forced to pay her own H-1B filing fees and the filing of "fraudulent" immigration documents. But the court permitted Dr. Bandikatla to proceed with a TVPA claim premised on HPMDPC's demand for either specific performance or $10 million in damages and its claims against CFMA. The court also denied summary judgment on HPMDPC's and Dr. Bandikatla's breach of contract claims. These remaining claims proceeded to a jury trial before Judge Rakoff in March 2023.

At trial, Dr. Patel conceded that his argument that Dr. Bandikatla committed to work for him for three years was rooted in her agreement to be bound by Section 214(*l*) of the INA (referenced in paragraph 2 of the contract). As Judge Rakoff explained the following day, paragraph 1 provides that HPMDPC will employ Dr. Bandikatla "for a three-year term on various terms and conditions," but "does not indicate that the physician is agreeing to a three-year term." Joint App'x at 1017. The obligation to work for a three-year term is instead is supplied by paragraph 2, where Dr. Bandikatla agreed to "the contractual obligations set forth in 214(*l*) of the Immigration and Nationality Act," which includes the extenuating circumstances exception. Joint App'x at 1017−18. Following Dr. Patel's concession, and additional briefing by the parties, Judge Rakoff held that "the contract carefully read is unambiguous" and that as a matter of law it incorporates Section 214(*l*)—including the extenuating circumstances exception. Joint App'x at

6

1022.  Because it was undisputed that USCIS determined that Dr. Bandikatla qualified for that exception, the court ruled that as a matter of law that she had not breached her contract with HPMDPC and dismissed HPMDPC's breach of contract claim.

Trial continued on Dr. Bandikatla's remaining claims, and the jury returned a verdict in her favor on March 14, 2023.  The jury found HPMDPC liable on Dr. Bandikatla's breach of contract counterclaim and awarded her $4,657.40 in damages.  The jury also found HPMDPC liable for violating the TVPA and awarded $45,000 in non-economic damages.  The district court denied HPMDPC's motion for judgment notwithstanding the verdict on the TVPA claim.  The court then granted Dr. Bandikatla's motion for attorneys' fees and costs, awarding her $259,701.00 in attorneys' fees and $10,206.38 in costs.

HPMDPC now appeals.

## I.    Denial of HPMDPC's Motion to Remand

HPMDPC first argues that this case was improperly removed to federal court.  HPMDPC moved in the district court to remand the case to state court, primarily on the ground that at the time it filed its original complaint in New York state court, Dr. Bandikatla had not yet established domicile in Florida and instead remained a New York domiciliary.  If true, this would have defeated diversity jurisdiction in the Southern District of New York because HPMDPC was domiciled in New York City.  HPMDPC also argued that the employment agreement contained a forum selection clause prohibiting Dr. Bandikatla from removing this action to federal court.  The district court rejected these arguments and denied the motion to remand.

We review a district court's decision denying a motion to remand *de novo* as to questions of law, *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 301–02 (2d Cir. 2004), but a "district court's factual findings as to whether there has been a change of residence and whether

7

that move was effected with the requisite intent of permanence may be overturned on appeal only if they are 'clearly erroneous,'" *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quoting Fed. R. Civ. Proc. 52(a)). To effect a change in domicile for the purposes of diversity jurisdiction, "two things are indispensable: First, residence in a new domicil[e]; and, second, the intention to remain there." *Id*. "A party alleging that there has been a change of domicile has the burden of proving the required intent to give up the old and take up the new domicile, coupled with an actual acquisition of a residence in the new locality, and must prove those facts by clear and convincing evidence." *Id*.

Here, the district judge found that Dr. Bandikatla established domicile in Florida by the date the complaint was filed because (1) by August 2018, she was living in an apartment with her in-laws in Hernando, Florida, and returning to New York only to work and move her belongings to Florida; (2) in September 2018, she signed an employment agreement with CFMA and changed the address on her bank account from New York to Florida; (3) she and her husband applied for an apartment in Maitland, Florida, on September 5, 2018, with a contemplated move-in date of October 26, 2018, and the application was approved before the filing date; (4) her husband had registered his car and paid taxes in Florida before the filing date; and (5) she had applied to transfer the address on her medical license to the address of her new employer. These facts, which Dr. Bandikatla attested to in a declaration, were almost all corroborated by documentary evidence: the rental application; a screenshot of Dr. Bandikatla's bank account; the vehicle registration; and the license transfer application. In addition, Dr. Bandikatla's in-laws submitted a declaration confirming that Dr. Bandikatla lived with them in Hernando, Florida, at the time the complaint was filed.

HPMDPC argues that the district court's decision was erroneous because (1) the address

on Dr. Bandikatla's pay stub for the period ending October 12, 2018, was her New York address; (2) both Dr. Bandikatla and her husband were in New York when she received the summons; (3) Dr. Bandikatla's answer filed in the Southern District of New York admitted that "the state court had jurisdiction and venue was proper prior to removal," Joint App'x at 136; (4) Dr. Bandikatla didn't submit enough documentation substantiating that she was domiciled in Florida at the time the complaint was filed; and (5) Dr. Bandikatla testified at trial that she received her medical license from Florida in January 2018 after filing an application sometime in December 2017, contrary to Dr. Bandikatla's declaration opposing remand where she stated that she applied for a "Florida medical transfer license" on October 5, 2018, *Id*. at 97.  According to HPMDPC, this latter inconsistency means that Dr. Bandikatla "obviously made material misrepresentations in her declaration," so her "statements were not credible and should have been disregarded by the District Court."  Appellant's Br. at 22.

We are unpersuaded.  First, HPMDPC's disputes about how the documents in evidence should be interpreted, and its arguments that there was not enough documentation, or that HPMDPC's documentation was more persuasive, do not render the district's court's factual findings regarding domicile clearly erroneous in the face of (some) conflicting evidence and her clearly demonstrated intent to permanently move to Florida.  Even if another court were more inclined to agree with HPMDPC's weighing of the evidence and would have drawn "contrary factual inferences," that is not a basis for setting aside the district court's factual findings. *Palazzo*, 232 F.3d at 44.

Second, Dr. Bandikatla's admission in her subsequently filed answer that the state court had jurisdiction has no bearing on the question whether the district court had diversity jurisdiction. By admitting that the state court had personal jurisdiction over the lawsuit, Dr. Bandikatla did not

9

implicitly admit that she was domiciled in New York. Jurisdiction could just as easily have been premised on her business contacts with New York. *See, e.g.*, *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008) (explaining that non-resident defendants can be subject to general jurisdiction based on a defendant's "general business contacts with the forum").

Third, we are unpersuaded by HPMDPC's argument that Dr. Bandikatla's trial testimony conflicted with her written declaration in a manner that undermines the veracity of her entire declaration. As an initial matter, the fact that Dr. Bandikatla may have applied for licensure in Florida *even earlier* than Judge Schofield thought only hurts HPMDPC's argument that Dr. Bandikatla was domiciled in New York at the time the lawsuit was filed. Second, it seems that a lack of precision in the declaration's wording is to blame for any arguable discrepancy: According to Dr. Bandikatla, the October 5, 2018, application requested a change in address for an already-existent transfer license—an assertion that is supported by the documentary record.

Finally, HPMDPC contends that the employment agreement's choice-of-law clause contained a forum selection clause mandating that any dispute be brought "in the City and County of New York." Appellant's Br. at 23–24. The first two sentences of the section, as relevant, provide: "This Agreement shall be governed by and be construed in accordance with the laws of the State of New York, without giving effect to conflict of laws, applicable to agreements made and to be performed entirely within such state. The parties herby irrevocably consent to (i) the jurisdiction of the courts of the State of New York, with venue to lie in the City and County of New York . . . ." Joint App'x at 59. In HPMDPC's view, the "irrevocabl[e] consent" to jurisdiction in the State of New York plus the proviso that venue will lie in the City and County of New York indicate that the clause intended to exclude all other forums. Appellant's Br. at 24. This argument, which is made in an entirely conclusory manner, fails under our precedent. As

10

we recently explained, "[t]o classify a forum selection clause as mandatory . . . we look for specific language of exclusion," and "[f]orum selection clauses lacking any clear exclusionary or obligatory language—i.e., specific language of exclusion—are permissive and not subject to a presumption of enforceability." *Rabinowitz v. Kelman*, 75 F.4th 73, 82–83 (2d Cir. 2023). We have also held that the phrase "submit to the jurisdiction of" is a permissive clause that allows, but does not require, that a case be heard in the specified forum. *Id*. at 85. The parties' agreement to "irrevocably consent" to jurisdiction, like an individual party's submission to jurisdiction, indicates no more than that a dispute *may* be brought in state court—not that it *must* be brought there. The clause contains no exclusionary language. Dr. Bandikatla was thus permitted to remove the case to federal court.

Accordingly, we discern no error in the district court's denial of HPMDPC's motion to remand the case to state court.

## II.     Dismissal of HPMDPC's Claims for Fraud, *Prima Facie* Tort, Breach of Fiduciary Duty, and Breach of the Implied Covenant of Good Faith and Fair Dealing

HPMDPC also challenges the district court's partial grant of Dr. Bandikatla's motion to dismiss, contending that its claims for fraud, *prima facie* tort, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing were adequately pleaded.

We review a district court's grant of a motion to dismiss *de novo*. *Kellogg v. Nichols*, 149 F.4th 155, 159 (2d Cir. 2025). The district court's opinion dismissed HPMDPC's non-breach of contract claims largely because the factual allegations underlying those claims were the same as the ones underlying the breach claim. As the district court explained, the fraud allegation was premised on Dr. Bandikatla's purported false representation that she "would be employed by" HPMDPC for a period of three years, which is really just an allegation that Dr. Bandikatla made

an insincere promise to perform a contract. Joint App'x at 42. Such allegations are "redundant of a claim for breach of the parties' contract and, therefore, do not state a cause of action for fraud." *Cronos Grp. Ltd. v. XComIP, LLC*, 64 N.Y.S. 3d 180, 190 (1st Dep't 2017). Similarly, HPMDPC's claim for breach of the implied covenant of good faith and fair dealing is premised on Dr. Bandikatla "resigning from her employment with Patel prior to the expiration of three years as was required under the terms of the Contract," which is the exact same conduct giving rise to the breach claim. Joint App'x at 50. Thus, because the claim is "based on the same allegations and seek[s] the same damages," it "must be dismissed as duplicative of the breach of contract claim." *Tillage Commodities Fund, L.P. v. SS&C Techs., Inc.*, 58 N.Y.S.3d 28, 31 (1st Dep't 2017). And HPMDPC's *prima facie* tort claim merely states that HPMDPC was harmed by Dr. Bandikatla's breach of the contract. This is likewise duplicative and was properly dismissed. *See Susman v. Commerzbank Capital Mkts. Corp.*, 945 N.Y.S.2d 5, 7–8 (1st Dep't 2012). On appeal, HPMDPC provides only conclusory statements as to why these claims are not duplicative of the breach of contract claim. We need not, and do not, accept HPMDPC's threadbare arguments. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court did not err in dismissing the fraud, implied covenant, and tort claims.

The district court dismissed HPMDPC's fiduciary duty claims because, as we have recently stated, "employment relationships, without more, do not create fiduciary relationships." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 184 (2d Cir. 2023). According to HPMDPC, because the "relationship[] between Patel and Bandikatla is rooted in higher levels of trust not normally present in the marketplace between those involved with arm's length business transactions, because beneficiaries of immigration benefits have a duty to be truthful and honest with their sponsors in the preparation of immigration papers and have a duty to advise their sponsors with truthful

12

information in preparing and presenting papers to the government," there was a fiduciary relationship here. Appellants' Br. at 37. HPMDPC offers no legal support—and we are aware of none—for the novel proposition that Dr. Bandikatla owed it a fiduciary duty because it sponsored her H-1B visa. And, even accepting HPMDPC's half-hearted suggestions that someone (it is unclear who) had "access to confidential information" (it is unclear belonging to whom), Appellants' Br. at 36, "the mere communication of confidential information is not sufficient in and of itself to create a fiduciary relationship between two parties." *Pauwels*, 83 F.4th at 184. *Cf. Kern v. Robert Currie Assocs.*, 632 N.Y.S.2d 75, 76 (1st Dep't 1995) (allegations that the plaintiffs "relied on defendants' expert advice . . . and entrusted them with their money" supported the existence of a fiduciary duty in the context of a commercial relationship). The claim for breach of fiduciary duty was properly dismissed.

### III.    Denial of HPMDPC's Motion for Summary Judgment

HPMDPC next challenges the district court's partial denial of its motion for summary judgment on Dr. Bandikatla's TVPA counterclaim. We decline to review this decision. We have explained that the proper vehicle to adjudicate, after trial, the denial of summary judgment is by bringing "a motion (and renewed motions) pursuant to Rule 50 for judgment as a matter of law and appeal[ing] the district court's denial of that motion." *Pahuta v. Massey-Ferguson, Inc.*, 170 F.3d 125, 132 (2d Cir. 1999). We have observed that it is "unjust to deprive a party of a jury verdict after the evidence was fully presented, on the basis of an appellate court's review of whether the pleadings and affidavits at the time of the summary judgment motion demonstrated the need for a trial." *Id.* (quoting *Locricchio v. Legal Servs. Corp.*, 833 F.2d 1352, 1359 (9th Cir. 1987)). Although we speculated in *Pahuta* that this "flaw . . . would not appear to be jurisdictional," 170 F.3d at 132, the Supreme Court has since held that a party cannot "appeal an

order denying summary judgment after a full trial on the merits," *Ortiz v. Jordan*, 562 U.S. 180, 183–84 (2011). On reply, HPMDPC notes that we do review denials of summary judgment when they are issued in conjunction with a grant of summary judgment and the grant of summary judgment has also been appealed. That is true, but Dr. Bandikatla has not appealed the district court's grant of summary judgment on her tortious interference of contract, NYSHRL, and NYCHRL counterclaims. We therefore decline to review HPMDPC's summary judgment arguments regarding her TVPA claim.

## IV. Dismissal of HPMDPC's Breach Claim at Trial

HPMDPC next challenges the district court's decision to dismiss its breach of contract claim at trial, but curiously categorizes the decision as an evidentiary ruling subject to review for abuse of discretion. But the district court's decision, as a matter of law, that Dr. Bandikatla did not breach the contract was clearly made pursuant to Federal Rule of Civil Procedure 50 and not a mere evidentiary ruling.

HPMDPC argues that the district court was precluded from dismissing the breach of contract claim during trial because it had previously denied summary judgment on that same claim. But under the law-of-the-case doctrine, a court has discretion to revisit its prior rulings before the entry of final judgment, based on considerations such as "new evidence" presented at trial. *Sagendorf-Teal v. County of Rensselaer*, 100 F.3d 270, 277 (2d Cir. 1996); *see Cangemi v. United States*, 13 F.4th 115, 140 (2d Cir. 2021) ("The law of the case doctrine cannot bar a district court from holding plaintiffs to their ever-increasing burden of proof over the course of a lawsuit."). That is precisely what the district court did here, and permissibly so. This Court could overturn the district court's dismissal of the breach of contract claim if it were wrong on the merits, but HPMDPC makes no such argument. Accordingly, there is no basis for our Court to disturb this

14

portion of the district court's ruling.

## V.    Jury Instruction 9

HPMDPC seeks a new trial on the ground that language in the jury instruction on the fourth element of Dr. Bandikatla's TVPA claim was erroneous and prejudicial.   We review a preserved claim of error in a jury instruction *de novo*.   *Saint-Jean v. Emigrant Mortg. Co.*, 129 F.4th 124, 147 (2d Cir. 2025).   "We will overturn a verdict on a challenge to jury instructions only if (1) the instructions were erroneous, and (2) the error was prejudicial."   *Id*.   "[I]n determining whether a jury instruction was so prejudicial as to warrant overturning the verdict, we must examine the jury charge in its entirety, rather than scrutinize it strand-by-strand."   *Id*.

Dr. Bandikatla's theory on the TVPA claim at trial was that HPMDPC "attempted to procure her labor by abuse of the legal process" in violation of 18 U.S.C. § 1589(a)(3).   Joint App'x at 716.   The district court's instruction on the first element—that one or more acts taken by the defendant abused the legal process—explained that Dr. Bandikatla's allegation was that HPMDPC "abused the legal process by pursuing her for millions of dollars in damages throughout the course of this case without any factual basis for claiming that amount" and by "naming her now-former-employer . . . as a defendant in this case and demanding millions of dollars in damages from them, also without any factual basis but for purposes of putting additional pressure on" Dr. Bandikatla.   Joint App'x at 716–17.   The instruction also explained that Patel "denies these allegations and offers alternative explanations for why these steps were taken and were allegedly not an abuse of the legal process."   *Id*. at 717.

The fourth element is that Bandikatla was injured by HPMDPC's actions.   The district court's instruction on this element explained that "[t]he injury can be economic, *such as the cost of defending an abusive lawsuit wrongly brought by [HPMDPC] against Dr. Bandikatla to try to*

15

*force her to return to work.* The injury can also be psychological, such as subjecting [Dr. Bandikatla] to unwanted stress." Joint App'x at 717 (emphasis added). HPMDPC objected to the italicized text in a letter to the court, arguing that the language "an abusive law suit [sic] wrongfully brought" should be amended to just "this lawsuit." Joint App'x at 701–02. The letter mostly focused on arguing the merits of whether the lawsuit was abusive—an issue the jury would resolve at trial—but also argued that "whether or not the lawsuit was abusive and wrongfully brought is a fact for the jury to decide and such charge would rob the jury of their fact finding function and is highly prejudicial to the plaintiff." Joint App'x at 701–02. The district court overruled HPMDPC's objection. HPMDPC takes much the same tack here, arguing that "Patel's suit against Bandikatla had a basis in fact and law at the time it was commenced as evidenced in two separate court decisions on Patel's breach of contract cause of action." Appellant's Br. at 51.

We see no basis to grant HPMDPC a new trial. Read in context, the challenged language in jury instruction 9 can be understood only as referring to what Dr. Bandikatla claimed about HPMDPC's lawsuit, not that the district court agreed with her. The first instruction—which preceded the fourth—made clear that HPMDPC denied the allegation that it abused the legal process and offered "alternative explanations for why these steps were taken and were allegedly not an abuse of the legal process." Joint App'x at 717. And, as Dr. Bandikatla points out, jury instruction 7 (which also preceded instruction 9) instructed the jury that it had to determine that Dr. Bandikatla "established each essential element of that claim by a preponderance of the credible evidence" to render a verdict in her favor. Joint App'x at 714. Moreover, it is not clear that changing the language to "this lawsuit" (as HPMDPC requested) would have been less prejudicial to HPMDPC, because it would have made the same point—that *this lawsuit* could supply the requisite injury for a TVPA claim. What HPMDPC really takes issue with is that the instruction

16

provided this lawsuit as an example of an injury that—if it was indeed abusive—would be cognizable under the TVPA.   But HPMDPC does not dispute the correctness of that proposition.

Thus read, the jury instruction was neither erroneous nor prejudicial.   We therefore decline to order a new trial on the ground raised by HPMDPC.

## VI.   Denial of Patel's Motion for Judgment as a Matter of Law on the TVPA Claim

HPMDPC also appeals the denial of its motion for judgment as a matter of law on Dr. Bandikatla's TVPA claim.   We review such rulings *de novo*, applying "the same [legal] standard that is required of the district court."   *Ortiz v. Stambach*, 137 F.4th 48, 60 (2d Cir. 2025).   A court may grant a motion for judgment as a matter of law in a jury trial only if it finds that "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party opposing the request."   *Id*.   To prove an attempted violation of the TVPA on the theory asserted here, a plaintiff must prove (1) acts that are an abuse of the legal process (2) taken "knowingly" (3) that were a "substantial step" in obtaining plaintiff's labor.   18 U.S.C. § 1589(a)(3); *United States v. Farhane*, 634 F.3d 127, 146 (2d Cir. 2011) (explaining the attempt standard).

In its opening brief, HPMDPC challenges the jury verdict on the TVPA claim on the same basis it presented to challenge the jury instruction, which we have already rejected.   In its reply brief, HPMDPC attempts to mount a sufficiency of the evidence challenge to the TVPA verdict, but we will not consider arguments raised only in a reply brief "even when the same arguments were raised in the trial court."   *McCarthy v. SEC*, 406 F.3d 179, 186 (2d Cir. 2005).

## VII.   Dr. Bandikatla's Attorneys' Fees Award

Finally, HPMDPC challenges the district court's award of attorneys' fees to Dr. Bandikatla. We review an award of attorneys' fees for abuse of discretion, and "given the district court's inherent institutional advantages in this area, our review is highly deferential."   *Rossbach v.*

17

*Montefiore Medical Center*, 81 F.4th 124, 144 (2d Cir. 2023). The district court found that Dr. Bandikatla was entitled to recover attorneys' fees based on: (1) the jury's verdict, which found that Dr. Bandikatla was entitled to the costs of her defense, which the instructions defined to include reasonable attorneys' fees; (2) a fee-shifting provision in the contract between Dr. Bandikatla and HPMDPC, which provided that if HPMDPC was determined to have breached the agreement, it must pay Dr. Bandikatla all of her costs and expenses, including attorneys' fees; and (3) the fee-shifting provision of the TVPA, which independently allows for the recovery of reasonable attorneys' fees, 18 U.S.C. § 1595(a). Having determined that Dr. Bandikatla was entitled to fees, the district court calculated the award in accordance with the fee-shifting provisions of the TVPA, ultimately reducing the calculated lodestar of $324,626.25 to $259,701.00 based on its assessment of Dr. Bandikatla's overall success in the litigation.

On appeal, HPMDPC first argues that attorneys' fees were erroneously awarded because "the entire jury verdict was based on an erroneous jury instruction." Appellant's Br. at 56. Because we have upheld the verdict, this is not a proper basis to vacate the award of attorneys' fees. Next, HPMDPC repeats its argument made in the district court that the fee arrangement between Dr. Bandikatla and her lawyers was a contingency arrangement, and that HPMDPC should not be forced to pay the fees because Dr. Bandikatla's counsel purportedly did not comply with a New York regulation requiring attorneys working on a contingent basis to file "retainer statements" with the New York Office of Court Administration. Appellant's Br. at 57. But we agree with the district court that the relevant regulation—22 N.Y.C.R.R. § 603.25—"is facially inapplicable to the agreements at issue here because neither agreement between [Dr. Bandikatla and her lawyers] provides that the 'attorney's compensation is to be dependent or contingent in whole or in part upon the successful prosecution or settlement thereof,'" as required under the

18

regulation. Special App'x at 55. Instead, her agreement with one firm is a straightforward hourly arrangement, and her agreement with the other firm sets forth an hourly fee arrangement subject to a cap, with additional fees to be paid only if the firm prevailed on a fee-shifting claim at trial, at which point a lodestar would be calculated. We agree with the district court that this does not render the latter agreement contingent, and HPMDPC has failed to offer any non-conclusory argument as to why this conclusion is wrong.

Finally, HPMDPC argues that the fee award is unreasonable because Dr. Bandikatla received only nominal damages, and thus her award overstates her attorneys' degree of success. But her damages were not nominal: in addition to $4,667.40 in contract damages for lost wages, Dr. Bandikatla received $45,000 in damages on the TVPA claim. HPMDPC also urges that "paying an attorney $269,907.38 to obtain $49,675.40 in damages" is "per se unreasonable," Appellant's Br. at 60, but this fails to account for the fact that Dr. Bandikatla did not initiate this lawsuit. HPMDPC did, and Dr. Bandikatla's attorneys achieved the dismissal of every one of HPMDPC's claims—including its demand for millions of dollars in damages.

HPMDPC has failed to convince us that the district court abused its discretion in awarding attorneys' fees, and fails to make any argument specific to the district court's award of costs. The district court did not abuse its discretion in either respect.

19

* * *

We have considered HPMDPC's remaining arguments and find them unpersuasive. Accordingly, we **AFFIRM** the judgment of the district court.

Costs of this appeal are awarded to Dr. Bandikatla.   *See* Fed. R. App. 39(a)(3).

FOR THE COURT:

Catherine O'Hagan Wolfe, Clerk